USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-2235

 PHILLIP NAPIER,

 Plaintiff, Appellant,

 v.

 TOWN OF WINDHAM, RICHARD LEWSEN,
 RICHARD RAMSDELL, AND RONALD RAMSDELL,

 Defendants, Appellees.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. D. Brock Hornby, U.S. District Judge]

 ____________________

 Before

 Torruella, Chief Judge,

 Campbell, Senior Circuit Judge,

 and Boudin, Circuit Judge.

 _____________________

 Stuart W. Tisdale, Jr., with whom Mary A. Davis and Tisdale &
Davis, P.A. were on brief, for appellant.
 William R. Fisher, with whom William R. Fisher, P.A. was on
brief, for appellee.

 ____________________

 August 6, 1999
 ____________________ TORRUELLA, Chief Judge. Plaintiff-appellant Phillip
Napier was shot by defendant-appellee Ronald Ramsdell ("Ronald") of
the Windham Police Department during a response call at Napier's
home by Ronald and his brother, defendant-appellee Richard Ramsdell
("Richard"). Napier brought suit against the Ramsdells, the Town
of Windham, Maine ("the Town"), and Chief of Police Richard Lewsen,
alleging state and federal civil rights claims and state law claims
for assault, battery, and negligence. The district court adopted
the magistrate's recommendation of summary judgment in favor of all
defendants on all claims, and Napier appeals. We affirm in part
and reverse in part.
 BACKGROUND
 On April 19, 1995, Phillip Napier was at his home, a
converted hunting camp on the shores of Highland Lake in Windham,
Maine. At approximately 6:00 p.m., Napier fired a rifle several
times from his porch into a woodpile about fifteen feet away. A
neighbor shouted to Napier and asked what was happening, to which
Napier responded that he was getting rid of some old ammunition. 
The neighbor walked back inside his own house, and Napier continued
to shoot into the woodpile. Meanwhile, the Windham Police
Department received at least one telephone call from Napier's
neighbors, complaining that Napier was firing a weapon from his
home. Officer Richard Ramsdell responded to the complaint by
driving to Napier's house. While driving, he radioed his brother,
Sergeant Ronald Ramsdell, and asked for backup assistance. The
police dispatcher told both officers that Napier was "possibly
1044," the code for "mentally disturbed." Richard arrived first at
Napier's house and parked his car partially in Napier's driveway.
 This is where the parties' versions of the events
diverge. Defendants claim that Richard cautiously approached
Napier's home with his sidearm holstered and determined that Napier
was not outside the house. Richard then waited for Ronald to
arrive, at which time Richard walked toward the open front door
with his hand on his still-holstered sidearm. Richard yelled, at
least twice, "Police department, Phil, are you here?" Richard
claims that he looked inside Napier's home and saw a rifle lying on
a table and a hand holding a weapon extending out of a doorway
inside the house. Richard then repeatedly shouted, "Police, drop
the gun," but Napier did not do so. Instead, Napier walked toward
Richard with his gun at his hip, pointed at Richard. Concerned for
his safety, Richard jumped over a woodpile on the porch and
continued to instruct Napier to drop the gun. Napier then stepped
into the doorway, still holding the gun. From the driveway, Ronald
saw Napier enter the doorway with a gun, so Ronald also shouted,
"Police, drop the gun." Defendants claim that Napier leaned over
the woodpile and pointed his gun at Richard, inducing Richard to
run around the corner of Napier's house and to fire a shot at
Napier while he ran. Ronald claims that when Napier raised his
weapon toward Richard, Ronald fired a burst of three rounds at
Napier. Ronald asserts that Napier then turned toward him with his
gun still raised, so Ronald fired three more rounds at him. Napier
was struck by one or more of the bullets and fell onto a bed just
inside his front door. The Ramsdells then subdued Napier and
placed him under arrest.
 Napier disputes this version. According to Napier,
Richard attempted to conceal his presence by parking only partially
in Napier's driveway and by skirting the house so as not to be
detected. Napier claims that Richard did not announce his presence
and carefully crept towards the front door with his gun drawn. 
Napier claims that he stepped out of a sideroom in his house,
carrying a .22 revolver in his right hand, pointed downward. 
Napier then saw Richard standing in his doorway, pointing his gun
at Napier. Napier says that he did not point his gun at Richard,
but that he did step backwards and lose his balance. Panicking,
Richard then jumped over or through a woodpile on the porch and
fired a bullet at Napier, even though Napier did not raise his gun
or fire a shot. The bullet missed, but Napier immediately came
under fire from Ronald Ramsdell, who was standing in the driveway. 
Ronald fired two bursts of three bullets at Napier, who was hit by
shots from the second burst. Napier fell onto a bed just inside
the door of his house and pleaded with the officers not to shoot
him again. The officers handcuffed Napier and asked him why he
shot at them. Napier, falling in and out of consciousness, heard
one of the Ramsdells say to the other, "Don't let anyone in."
 These disputed accounts first hit the courtroom in
Napier's criminal trial. Napier was indicted on five charges
arising out of the incident: (1) recklessly creating a substantial
risk of serious bodily injury to Richard with a dangerous weapon;
(2) intentionally or knowingly placing Richard in fear of imminent
bodily injury with a dangerous weapon; (3) discharging a firearm
within 100 yards of a dwelling; (4) intentionally or knowingly
placing Ronald in fear of imminent bodily injury with a dangerous
weapon; and (5) recklessly creating a substantial risk of serious
bodily injury to Ronald with a dangerous weapon. Following a jury
trial, Napier was convicted of discharging a firearm near a
dwelling and of criminal threatening and reckless conduct with
regard to Richard Ramsdell, but he was acquitted of the criminal
threatening and reckless conduct charges with regard to Ronald
Ramsdell. Napier's appeal of his convictions was denied. See
State v. Napier, 704 A.2d 869 (Me. 1998).
 On April 19, 1997, Napier filed the present action,
alleging six causes of action against Lewsen, the Ramsdells, and
the Town. In Count I, Napier claimed under 42 U.S.C. 1983 that
the Ramsdells used excessive force against him in violation of his
Fourth Amendment rights. In Counts II and III, Napier alleged that
the Town and Chief Lewsen, respectively, were also liable under
 1983 because they failed to properly train and supervise the
Ramsdells in the use of deadly force. Count IV alleged that Lewsen
and the Ramsdells were liable for Napier's injuries under the state
law theories of assault, battery, and negligence. Count V alleged
that the Town was vicariously liable for the negligence of Lewsen
and the Ramsdells. Finally, Count VI alleged that all defendants
were liable under Maine civil rights law "on the same basis that
all defendants [we]re liable under . . . 1983."
 Proceedings in this action were stayed until the
resolution of Napier's criminal appeal on January 8, 1998. 
Following discovery, all defendants moved for summary judgment. On
August 19, 1998, Magistrate Judge David M. Cohen issued a
recommended decision on defendants' motion, recommending the entry
of summary judgment in favor of all defendants on all counts. On
September 8, 1998, Napier filed his objections to the recommended
decision and a memorandum of law opposing summary judgment. In a
two-page order issued on October 1, 1998, Chief District Judge
D. Brock Hornby adopted the recommended decision and granted
defendants' motion for summary judgment in its entirety. Judgment
entered the following day, and Napier filed a timely notice of
appeal.
 DISCUSSION
I. Summary Judgment Standard
 Summary judgment is proper where "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled
to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the
moving party has pointed to the absence of adequate evidence
supporting the nonmoving party's case, the onus is on the nonmoving
party to present facts that show a genuine issue for trial. See
Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25 (1st Cir.
1997); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841-42 (1st
Cir. 1993), cert. denied, 511 U.S. 1018 (1994). "[A] party
opposing a properly supported motion for summary judgment may not
rest upon mere allegation or denials of his pleading, but must set
forth specific facts showing that there is a genuine issue for
trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256
(1986)(citing Fed. R. Civ. P. 56(e)). "[P]laintiff . . . [must]
offer[] . . . 'significant probative evidence tending to support
the complaint.'" Id. at 256 (quoting from First National Bank of
Arizona v. Cities Service Co., 391 U.S. 253, 290 (1968)). We
review the district court's grant of summary judgment de novo. See
Serrano-Cruz, 109 F.3d at 25.
II. Claims Under 42 U.S.C. 1983
 The magistrate recommended the entry of summary judgment
in favor of all defendants on Napier's 1983 claims. The
magistrate recommended summary judgment in favor of the Ramsdells
based on a determination that a jury could not find that their
conduct was so deficient that no reasonable officer could have made
the same choices under the circumstances. The magistrate
recommended summary judgment in favor of appellee Lewsen on
alternative bases. First, the magistrate found that the lack of a
constitutional violation on the part of the Ramsdells precluded any
claim for supervisory liability against Lewsen. Second, the
magistrate also found that Napier offered no evidence: (1) that
Lewsen was put on notice of Fourth Amendment violations prior to
the incident involving Napier, or (2) that any act or omission by
Lewsen led to the shooting of Napier. Finally, the magistrate
recommended the entry of summary judgment in favor of the Town
because no constitutional rights were violated by municipal
employees. Each recommendation was accepted by the district court.
 Napier appeals the judgment disposing of all claims
against all parties, but his arguments with respect to the 1983
claims challenge only the magistrate's determinations concerning
the Ramsdells. Therefore, the fate of Napier's appeal of the entry
of judgment in favor of Lewsen and the Town on the 1983 claims
rests solely on the fortunes of his arguments concerning the
Ramsdells. We turn to those arguments.
 A. Basis For the Magistrate's Recommended Decision
 We begin by noting that it is difficult to ascertain from
reading the recommended decision whether the magistrate recommended
summary judgment in favor of the Ramsdells on the 1983 claims on
the basis of qualified immunity or upon a determination that no
jury could find a constitutional deprivation. Appellants raised
both arguments in their motion for summary judgment. The
magistrate recommended summary judgment because he found that no
jury could find the officers' conduct to be "objectively
unreasonable." Unfortunately for clarity's sake, the "objective
reasonableness" of the officers' conduct is crucial to both the
qualified immunity and substantive liability inquiries. The Fourth
Amendment inquiry in excessive force cases asks whether the
officers' actions are "objectively reasonable" in light of the
facts and circumstances confronting them. See Graham v. Connor,
490 U.S. 386, 397 (1989). There are two prongs to the qualified
immunity analysis. The first prong is whether the constitutional
right in question was clearly established at the time of the
alleged violation. See Swain v. Spinney, 117 F.3d 1, 9 (1st Cir.
1997). In the second prong, the court employs an "objective
reasonableness" test in determining whether a reasonable, similarly
situated official would understand that the challenged conduct
violated the established right. See id. Phrased another way,
police officers are entitled to qualified immunity if reasonably
well-trained officers confronted with similar circumstances could
reasonably believe their actions were lawful under clearly
established law. See Anderson v. Creighton, 483 U.S. 635, 641
(1987).
 As a result of these similar inquiries, the magistrate's
determination that no jury could find that the Ramsdells' conduct
was objectively unreasonable could have been a grant of summary
judgment on either qualified immunity or substantive Fourth
Amendment grounds. The parties treat the decision as if it was an
entry of judgment on alternative bases, so we will also treat it as
such. In any event, because what is disputed here is the
determination that no jury could find the Ramsdells' conduct to be
objectively unreasonable, and not the legal consequences that flow
from such a determination, we need not dissect the magistrate's
grounds for decision any further. We need only determine whether
a genuine issue exists that should have precluded the magistrate
from making this determination. B. Correctness of the Standard Applied By the Magistrate
 We next address Napier's claim that the district court
applied an incorrect standard in granting summary judgment in favor
of the Ramsdells on the 1983 claim. As identified by Napier, the
district court stated that the "relevant inquiry here is whether no
reasonable officer could have made the same choice under the
circumstances." Napier argues that the standard the court should
have applied is whether a jury could find that the Ramsdells'
conduct was objectively unreasonable. Napier argues that the
district court erroneously required him to fully prove, in order to
survive the summary judgment stage, that no reasonable police
officer could have done what the Ramsdells did.
 In Roy v. Inhabitants of the City of Lewiston, 42 F.3d
691, 694 (1st Cir. 1994), we outlined the constitutional standard
for evaluating 1983 causes of action based upon the use of deadly
force. We noted the Supreme Court's instruction in Graham, 490
U.S. at 397, that the constitutionality of the use of deadly force
incident to arrest depends solely on whether the officer's conduct
was "objectively reasonable." See Roy, 42 F.3d at 694. We also
recited the qualified immunity test for 1983 actions as shielding
a "reasonable officer" judged by an objective standard. See id.
(citing Anderson, 483 U.S. at 641). We stated that, although
substantive liability and qualified immunity are two separate
questions, the Supreme Court employs the same "objective
reasonableness" standard for each inquiry. See id. at 695. We
then applied that "objective reasonableness" standard in
determining whether the summary judgment entered in favor of the
officer in Roy was appropriate. We found that summary judgment was
proper because "in our view a jury could not find that [the
defendant's] conduct was so deficient that no reasonable officer
could have made the same choice." Id.
 Citing Roy, the magistrate here held that "a jury could
not find that Richard's conduct was so deficient that no reasonable
officer could have made the same choice under the circumstances." 
This is identical to the standard applied in Roy. Turning to the
claim against Ronald Ramsdell, the magistrate stated that the
relevant inquiry is "whether Ronald's conduct was so deficient that
no reasonable officer could have made the same choice under the
circumstances." The magistrate then found that the Roy standard
was met because "[a] reasonable officer could have made the same
choice under the circumstances." The magistrate did not explicitly
state that he was continuing to inquire whether a jury could make
that determination, as opposed to simply making the factual
determination himself, but it seems clear from the context that the
magistrate correctly applied the summary judgment standard. The
magistrate's determination that "[a] reasonable officer could have
made the same choice under the circumstances" is the equivalent of
making Roy's finding that a jury could not find that no reasonable
officer could have made the same choice under the circumstances. 
The magistrate merely replaced the inartful phrasing of the
standard applied in Roy with an equivalent standard that omitted
the double negative.
 Napier cites no authority to counter Roy, but complains
that if he is required to prove that no reasonable police officer
could have made the choices made by the Ramsdells, then he is
forced to fully prove the Ramsdells' liability in order to avoid
summary judgment. We disagree. Napier need not fully prove
liability in order to avoid summary judgment under the standard
applied by the magistrate; he need only demonstrate that a
reasonable jury could later find that he has proven liability. 
Identifying those plaintiffs who cannot so demonstrate is one of
the purposes of summary judgment. See Conward v. Cambridge School
Committee, 171 F.3d 12, 18 (1st Cir. 1999) ("[The summary judgment]
rule acts as a firewall to contain the blaze of cases that are so
lacking in either factual foundation or legal merit that trial
would be a useless exercise."). Therefore, without commenting yet
on the correctness of the magistrate's determinations, we find that
the magistrate employed the correct standard in making them.
 C. Objective Reasonableness of the Ramsdells' Conduct
 Napier argues that material factual disputes exist that
should have prevented the magistrate from determining that a jury
could not find that the Ramsdells' conduct was so deficient that no
reasonable officer could have made the same choices under the
circumstances.
 1. Richard Ramsdell's Conduct
 With regard to Richard Ramsdell's conduct, the magistrate
found that two facts -- both of which were conclusively established
by Napier's criminal convictions -- led to the conclusion that
Richard's actions were objectively reasonable. It is "beyond
doubt" that issue preclusion applies to a federal civil rights
action following a criminal conviction in state court. See Allen
v. McCurry, 449 U.S. 90, 102 (1980); Glantz v. United States, 837
F.2d 23, 25 (1st Cir. 1988). Because federal courts must give
preclusive effect to judgments in state court whenever the courts
of the particular state would do so, see Allen, 449 U.S. at 415-16,
we examine Maine's collateral estoppel rules in this context. In
Maine, a prior criminal conviction "conclusively establishes all
facts essential to the final judgment of conviction." Hanover Ins.
Co. v. Hayward, 464 A.2d 156, 160 (Me. 1983). The convicted party
is precluded from litigating the issues essential to that
conviction in subsequent civil actions. See Beale v. Chisolm, 626
A.2d 345, 347 (Me. 1993).
 The magistrate correctly found two facts to have been
established in the criminal action against Napier: (1) that Napier
placed Richard in fear of imminent bodily injury with a dangerous
weapon, and (2) that Napier recklessly created a substantial risk
of serious bodily injury to Richard with a dangerous weapon. These
facts were essential to Napier's criminal convictions for criminal
threatening with a dangerous weapon and reckless conduct with a
dangerous weapon, see 17-A M.R.S.A. 209(1) & 211(1), and are
therefore established for purposes of Napier's civil rights suit. 
In light of these established facts, we agree with the magistrate
that a jury could not find that Richard's conduct -- firing a
single shot at Napier while attempting to find cover -- was so
deficient that no reasonable officer could have made the same
choice under the circumstances. See Roy, 42 F.3d at 695 (affirming
summary judgment in favor of officers who used deadly force on a
suspect who threatened them with knives, because no jury could find
the officers' conduct to be objectively unreasonable).
 2. Ronald Ramsdell's First Burst of Bullets
 Ronald Ramsdell's conduct, however, requires closer
scrutiny because Napier was acquitted of threatening Ronald and of
placing him at risk of serious bodily injury. It is undisputed
that Ronald fired two bursts of three bullets each at Napier, and
the magistrate analyzed each burst separately. As noted by the
magistrate, Ronald testified at Napier's criminal trial that he
fired the first three rounds because he thought Napier was going to
shoot Richard and that he fired the second three rounds because he
thought Napier was going to shoot him.
 The magistrate recommended summary judgment with regard
to the first burst because he found that a reasonable officer could
have made the same choice under the circumstances of witnessing
Napier's creation of a substantial risk of serious bodily injury to
Richard. Due to the collateral estoppel effect of his criminal
conviction, Napier cannot create a genuine issue regarding whether
he actually created a substantial risk of serious bodily injury to
Richard. What Napier can and does argue on appeal is that there is
a genuine issue of material fact regarding whether Ronald knew of
or was able to witness that creation of risk.
 Napier now claims that Ronald could not see Napier inside
the house. However, Napier did not present this argument or any
evidence supporting it to the magistrate, so it was not part of the
summary judgment record. This alone adequately supports the
magistrate's determination. In any event, it would not matter if
Napier had claimed that Ronald could not have seen Napier inside
the house because Ronald did not claim to have been able to do so. 
To the contrary, Ronald specifically testified that he could not
see Napier when Napier was inside. All parties agree that, when
Richard jumped behind the woodpile, Napier came to the open doorway
of the house. Whether Ronald could see into the house from his
position in the driveway is irrelevant, because Napier came out to
the open doorway, where he could be seen -- and shot -- by Ronald. 
Napier does not dispute that Ronald: (1) knew that Napier was
possibly mentally disturbed; (2) knew that Richard had quickly
retreated from Napier by jumping over the woodpile on the porch;
and (3) saw Napier in the open doorway holding a gun. 
Consequently, Napier has not created a genuine issue as to whether
Ronald knew that Napier placed Richard at a substantial risk of
serious bodily injury. Rather, it has been conclusively
established that Napier threatened Richard and placed him at risk
of serious bodily injury, and it is undisputed that Ronald knew of
those facts at the time he fired the first burst of bullets at
Napier. Therefore, we do not disturb the magistrate's decision
regarding the first burst of bullets fired by Ronald.
 3. Ronald Ramsdell's Second Burst of Bullets
 The magistrate found Ronald's second burst to be
objectively reasonable based on his fear that Napier was going to
shoot him when Napier turned to face him after the first burst of
bullets. Because Napier was acquitted of charges of criminal
threatening and reckless conduct toward Ronald, there is no
collateral estoppel with regard to those issues. In making his
determination regarding the reasonableness of the second burst, the
magistrate relied on the "very short period of time involved, the
plaintiff's failure to drop his gun, and the fact that the
plaintiff does not contend that he did not hear Richard's and
Ronald's repeated orders to drop his gun." In light of those three
factors, the magistrate stated that Napier's denial that he raised
his gun when he turned toward Ronald was not determinative. 
 We would agree with the magistrate's conclusion if the
undisputed record was that Ronald: (1) saw that Napier held a
firearm when Napier turned to face him; (2) ordered Napier to drop
his weapon; and (3) shot Napier when he refused to do so. However,
Napier disputes whether the officers ever identified themselves or
instructed him to drop his weapon. Contrary to the magistrate's
statement, Napier did contend that he did not hear the officers
identify themselves or order Napier to drop his gun. Napier also
points to the testimony of neighbors who heard Napier shouting to
his neighbor before the police arrived but did not hear any later
yelling or shouting from the officers. From this, Napier contends
that a reasonable jury could conclude that no such warnings were
given by the officers.
 At oral argument, Napier pointed out that he did argue
below: (1) that neither he nor his neighbors heard the warnings
that the Ramsdells claim to have given, and (2) that a reasonable
jury could conclude that the Ramsdells did not in fact warn Napier
of their presence or command him to drop his gun. However, these
arguments were not made in Napier's brief in opposition to
appellants' motion for summary judgment; rather, they were offered
in the accompanying Statement of Material Facts. The argument
section of Napier's brief was the proper place to outline all of
his arguments in opposition to defendants' motion for summary
judgment, including all of the alleged factual disputes. Nowhere
in Napier's brief did he argue that a factual issue existed
regarding whether the officers gave warnings to Napier before
opening fire. We are reluctant to forgive the omission of an
argument from an opposition brief merely because that argument was
made in an accompanying statement of material facts. Because of
Napier's failure to include this argument in his brief, the
magistrate missed this factual dispute and erroneously stated that
Napier "[did] not contend that he did not hear Richard's and
Ronald's repeated orders to drop his gun."
 However, these arguments were expressly outlined in
Napier's Statement of Material Facts, an eleven-page document that
Napier was required to file with his opposition brief. Further,
after the magistrate issued his recommended decision, Napier filed
a statement of objections to that recommended decision. In that
document, Napier specifically identified the factual dispute
between the officers, who testified that they ordered him to drop
his weapon, and Napier, who testified that he heard nothing. The
district court's October 1, 1998 Order affirming the recommended
decision stated that the district court: (1) reviewed the
recommended decision and the entire record, and (2) made a de novo
determination of all matters adjudicated by the recommended
decision. Even though we can understand how the magistrate and
district court could have missed the factual dispute buried in
Napier's Statement of Material Facts, that factual dispute was
reiterated in Napier's objections to the recommended decision. 
Finally, Napier's motion for oral argument was denied by the
district court, depriving him of any last opportunity to point out
the magistrate's error and to more prominently bring this dispute
to the attention of the court. For these reasons, we reluctantly
find that the factual dispute regarding whether warnings were given
is part of the summary judgment record. 
 Nevertheless, we can affirm the district court's entry of
summary judgment in favor of Ronald Ramsdell on any independently
sufficient ground. See Mesnick v. General Electric Co., 950 F.2d
816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992);
Polyplastics, Inc. v. Transconex, Inc., 827 F.2d 859, 860 (1st Cir.
1987). Even absent agreement that the officers warned Napier to
drop his gun, we agree with the magistrate that no reasonable jury
could find Ronald's conduct of firing the second burst of three
bullets to be so deficient that no reasonable officer could have
made the same choice under the circumstances. 
 The established and undisputed circumstances facing
Ronald at the time he made the decision to fire the second burst
were as follows. The Ramsdells were investigating a complaint that
Napier was firing a weapon from his home and were told that Napier
might be mentally unstable. When Richard approached the house,
Napier threatened him with a gun, recklessly creating a substantial
risk of serious bodily injury to Richard. Richard responded by
jumping behind a woodpile, scrambling around the corner of the
house, and firing a shot at Napier, who continued to hold the gun. 
Ronald knew that his brother had leaped behind the woodpile in
retreat, and he saw Napier, still holding his gun, emerge into the
doorway. Fearing for his brother, Ronald fired the first burst of
bullets at Napier, but Napier was not hit. Rather than drop his
gun, Napier then turned toward Ronald. It was at this point that
Ronald fired the contested second burst.
 We cannot find that the firing of the second burst was so
deficient that no reasonable officer could have made the same
decision. The facts established at Napier's criminal trial
demonstrate that Ronald was correct in fearing that his brother had
been threatened by a possibly mentally disturbed man with a gun and
was at risk of serious bodily injury. Ronald fired a burst of
three bullets and nothing changed: Napier did not fall to the
ground, drop his gun, or otherwise indicate that the risk no longer
existed. Instead, he turned to face Ronald, causing him to believe
that he was now also placed at risk. All of this occurred within
seconds. We agree that Napier's self-serving claim that he did not
point his gun at Ronald is not determinative. After what had
already occurred, Napier need not have specifically pointed his gun
at Ronald for Ronald to believe that the danger still existed and
now also encompassed him. We must remember that the reasonableness
of an officer's use of force must be judged from the perspective of
a reasonable officer on the scene, rather than with the 20/20
vision of hindsight. See Graham, 490 U.S. at 396. "The calculus
of reasonableness must embody allowance for the fact that officers
are often forced to make split-second judgments -- in situations
that are tense, uncertain, and rapidly evolving -- about the amount
of force that is necessary in a particular situation." Id. at 396-
97. Therefore, we agree with the magistrate that no reasonable
jury could find that Ronald's conduct of firing the second burst of
three bullets was so deficient that no reasonable officer could
have made the same choice under the circumstances. At the very
least, we find that Ronald could have reasonably believed that the
second burst was justified and lawful due to the threat to his
brother, the ineffectiveness of the first burst at ending that
threat, and the quickly emerging apparent threat to himself. 
Therefore, under the standard enunciated in Anderson, Ronald is
entitled to qualified immunity with regard to the second burst,
whether Napier has alleged a viable Fourth Amendment violation or
not. See Anderson, 483 U.S. at 641.
 4. Creation of Exigent Circumstances
 Napier also argues that even if the officers' conduct was
objectively reasonable given the exigent circumstances, the
officers were the ones to blame for creating those exigent
circumstances. Citing St. Hilaire v. City of Laconia, 71 F.3d 20
(1st Cir. 1995), cert. denied, 518 U.S. 1017 (1996), Napier argues
that the police cannot evoke exigencies of the moment created by
their own unreasonable conduct as justification for inflicting
deadly force that, but for their blunders, would never have been
used. However, St. Hilaire does not stand for that proposition. 
In St. Hilaire, we rejected the defendants' argument that the
police officers' actions must be examined for reasonableness only
at the moment of the shooting, opting instead to examine the
officers' actions leading up to the shooting. See id. at 26. We
then stated that the district court's focus on only the moment of
the shooting led it to erroneously define the issue as whether
there was any clearly established constitutional duty on the part
of the police to avoid creating situations which increased the risk
of the use of deadly force. See id. at 27. We specifically
rejected this as the proper inquiry, and we did not pass on the
existence of such a broad duty. See id. 
 Absent additional authority, we cannot agree that the
Ramsdells' pre-confrontation actions should deprive their later
conduct in response to Napier's actions of its reasonableness. 
Even under Napier's version of the events, the officers merely
walked quietly around to the front door of Napier's house with
their guns drawn, pursuant to a departmental procedure for
responding to a shooting complaint. The cautious and covert manner
in which the Ramsdells chose to approach the front of the house
does not change the established fact that, once the officers
encountered Napier, he threatened Richard Ramsdell with his gun and
placed him at risk of serious bodily injury. The fact that the
officers prepared themselves for exactly the behavior that Napier
exhibited does not make their actions any less reasonable. 
 However, even though the Ramsdells' pre-confrontation
actions do not deprive their later actions of their reasonableness,
the pre-confrontation actions themselves could theoretically serve
as the unreasonable conduct on which a 1983 claim is based. As
noted above, we stated in St. Hilaire that the police officers'
actions leading up to the shooting must be examined for their
reasonableness. See St. Hilaire, 71 F.3d at 26 (citing Brower v.
Inyo, 489 U.S. 593 (1989)). After rejecting the district court's
broad formulation of the inquiry (i.e. whether the duty to avoid
creating situations which increase the risk of the use of violence
was clearly established), we inquired whether the duty to "knock
and announce" in executing a search warrant was clearly
established. See id. at 27. Finding that no such duty was clearly
established at the time of the incident, we held that the officers
were entitled to qualified immunity. See id. at 28.
 Although Napier's underlying theory that the armed
officers caused the confrontation by surprising Napier is similar
to the plaintiff's underlying theory in St. Hilaire, see id. at 27,
the question of whether an officer must "knock and announce" before
executing a search warrant is plainly not at issue here. Napier
does not expressly outline the "clearly established" right or
obligation that the Ramsdells allegedly breached with their pre-
confrontation conduct. As noted above, the St. Hilaire court
rejected as "broadly defined" the district court's formulation of
the obligation as the duty "to avoid creating situations which
increased the risk of use of deadly force." Id. To determine
which more narrowly-drawn obligation Napier must be asserting as
"clearly established," we can only analyze Napier's allegations of
actions by the Ramsdells that created the confrontation. The only
"blunder" that Napier identifies on appeal in arguing that the
Ramsdells erred in allowing the situation to develop into a
threatening one was that of sneaking around the house with their
guns drawn, rather than telephoning Napier or contacting him from
a position of cover. Napier cites no authority for the proposition 
that, in responding to a complaint of the discharge of a firearm,
the officers have a duty to announce their presence to the shooter
well before they reach the front door of the dwelling. Napier's
assertion that the officers should have "called ahead" may or may
not be a helpful suggestion to law enforcement, but Napier cites no
authority that the Ramsdells had a clearly established duty to do
so. Nor does he cite any authority for the proposition that the
Ramsdells had a duty to refrain from approaching with their guns
drawn in preparation for the potential danger of Napier's weapon
being fired again. Therefore, like the officers in St. Hilaire,
the Ramsdells are entitled to qualified immunity on this theory. 
See id. at 28. As a result, Napier's attempt to expand the scope
of the scrutiny of the Ramsdells' actions to include those that
occurred before the confrontation with Napier does not assist him
in avoiding summary judgment.
 D. Conclusions Regarding Napier's 1983 Claims
 In sum, we agree with the district court that a jury
could not find that the Ramsdells' conduct was so deficient that no
reasonable officer would have made the same choice under the
circumstances. Thus, summary judgment in favor of the Ramsdells on
Napier's 1983 cause of action was appropriate. Because the 
grant of summary judgment in favor of Lewsen and the Town was based
upon the decision with respect to the Ramsdells, and because
appellant makes no arguments that specifically address the 1983
claims against Lewsen or the Town, we also affirm the grant of
summary judgment in favor of Lewsen and the Town.
III. State Law Tort Claims
 Napier requests that we vacate the entry of judgment in
favor of all defendants on his state law tort claims. Napier
asserted: (1) claims for battery, assault, and negligence against
the individual defendants, and (2) a claim against the Town for its
"vicarious corporate liability" for the negligence of the
individual defendants. The magistrate recommended the entry of
judgment against these state law tort claims because: (1) Napier
failed to respond to the Ramsdells' arguments that they were
entitled to absolute immunity under 14 M.R.S.A. 8111(1); (2) even
if Napier had responded, the Ramsdells would be entitled to
immunity under 8111(1); (3) Lewsen was also entitled to 8111(1)
immunity for his allegedly negligent supervision and training of
the Ramsdells; and (4) the Town could not bear vicarious liability
for tort claims which were no longer viable.
 Napier argues on appeal that summary judgment on his
state law tort claims was erroneous because the defendants have
failed to show that the Town has not waived its statutory
immunities and those of its employees by procuring liability
insurance. Under the Maine Tort Claims Act, employees of
governmental entities are absolutely immune from personal civil
liability for: (1) discretionary acts performed within the scope of
their employment, and (2) intentional acts or omissions occurring
in the scope of their employment. See 14 M.R.S.A. 8111(1)(C) &
(E). The Act also provides that towns and other governmental
entities are immune from suit on all tort claims unless immunity is
expressly removed by statute. See 14 M.R.S.A. 8103(1); Hill v.
Lubec, 609 A.2d 699, 700 (Me. 1992). However, if a governmental
entity procures insurance that provides coverage in areas where the
governmental entity is immune under the Act, the entity waives its
immunity, but only to the limits of the insurance coverage. See 14
M.R.S.A. 8116; Moore v. City of Lewiston, 596 A.2d 612, 615-16
(Me. 1991). As governmental immunity is an affirmative defense,
the entity bears the burden of establishing that it had no
insurance coverage for the plaintiff's claims. See King v. Town of
Monmouth, 697 A.2d 837, 840 (Me. 1997).
 The district court addressed the waiver issue in its
order affirming the recommended decision. Citing Moore, the
district court observed that 8116 "does not waive immunity for
otherwise immune municipal employees who have insurance; it does
that only as to a government entity." In Moore, the Supreme
Judicial Court of Maine found that summary judgment entered in
favor of the City of Lewiston on a common law tort claim was
inappropriate because the government entity did not produce
evidence to show that it did not possess insurance coverage for the
claim. See Moore, 596 A.2d at 615. The Court found that, under
 8116, the City of Lewiston could have waived its statutory
immunities by procuring liability insurance coverage, so summary
judgment on the basis of those immunities, without proof that no
insurance applied, was premature. See id.
 The Moore Court went on to hold, however, that 8116 did
not waive the personal liability of the individual police officers,
who were employees of the City. See id. at 616. The Court noted
the difference in the language of 8116 with regard to entities
and their employees:
 Section 8116 provides that a governmental
 entity "may purchase insurance . . . on behalf
 of its employees to insure them against any
 personal liability for which a government
 entity is obligated to provide defense or
 indemnity under 8112." However, unlike the
 parallel provision in section 8116 regarding
 government entities, which states that "the
 governmental entity shall be liable . . . to
 the limits of the insurance coverage"
 (emphasis added), this provision does not
 purport to waive the personal immunity of
 insured employees. Thus, regardless of
 whether the City's insurance coverage extended
 to the defense or indemnity of the police
 officers, their personal immunity from
 liability could not have been waived. 
Id. at 616 (footnote omitted).
 The district court here acknowledged that some ambiguity
results from the case cited by Napier, Rippett v. Bemis, 672 A.2d
82, 88-89 (Me. 1996), but the court still relied on Moore's clear
statement distinguishing the entity from the employee. In Rippett,
the Court found a waiver of a sheriff's immunity because the
Sheriff's Department carried insurance. See id. at 89. The
district court here read Rippett as applying the insurance waiver
of entity immunity and not employee immunity for four reasons:
(1) the statutory language is clear in that the waiver applies to
a "governmental entity"; (2) the Moore Court was explicit in
stating that the waiver does not apply to employees; (3) Rippett
does not overrule or even mention Moore; and (4) the Sheriff's
Department in Rippett was in fact a governmental entity as to which
insurance coverage would waive immunity. Therefore, the district
court found that the immunity of Lewsen and the Ramsdells, as
individual employees, could not have been waived by insurance
coverage. From this, the district court found that the Town
escapes liability on Napier's tort claims, not because the Town's
immunity was in place, but because there were no viable claims
against the employees for which the Town could be vicariously
liable.
 We express no opinion as to the district court's reading
of Rippett as only applying 8116 to waive the Sheriff's
Department's entity immunity and not the sheriff's employee
immunity. We need not attempt to distinguish Rippett because it is
clear that the Supreme Judicial Court of Maine continues to adhere
to the distinction drawn in Moore between entity immunity, which
may be waived through the procurement of liability insurance, and
employee immunity, which may not. See Grossman v. Richards, 722
A.2d 371, 376 (Me. 1999) ("Section 8116 only affects the liability
of governmental entities, and does not waive the immunity of the
individual insured employees."). Therefore, the district court was
correct in finding that there was no genuine issue as to whether
the individual defendants waived their statutory immunity.
 However, while the Moore/Grossman distinction applies
here to entitle the individual employee defendants to summary
judgment on Napier's state law tort claims, the Town is not
similarly entitled. Contrary to the district court's
determination, the immunity enjoyed by Lewsen and the Ramsdells
does not relieve the Town of its vicarious municipal liability. 
"'Under the doctrine of respondeat superior, a principal has no
defense based on an agent's immunity from civil liability for an
act committed in the course of employment.'" Berard v. McKinnis,
699 A.2d 1148, 1152 n.9 (Me. 1997) (quoting Restatement (Second) of
Agency 217(b)(ii) (1958)). In Berard, the Supreme Judicial Court
of Maine stated that a waiver of governmental entity immunity under
 8116 "would expose [the entity] to liability despite [its
employee]'s personal immunity from liability." Id.
 Similarly, in Moore, as described above, the Supreme
Judicial Court found that the individual officers' immunity may not
be waived, but that the City's immunity may be waived. See Moore,
596 A.2d at 615-616. The Court then remanded for further
proceedings on the vicarious liability negligence claim against the
City. See id. at 617. The Court did not affirm the entry of
summary judgment in favor of the City on the vicarious liability
negligence claim simply because the negligence claims against the
officers -- for whom the City was potentially vicariously liable --
failed due to the officers' statutory immunity. The City in Moore
was still potentially vicariously liable for the actions of its
officers, even though those officers enjoyed immunity from suit. 
The same is true for the Town here. Therefore, the district court
erred in granting summary judgment in favor of the Town on Napier's
claims of "vicarious corporate liability" for the negligence of the
individual defendants.
 CONCLUSION
 Based on the foregoing, we: (1) VACATE the entry of
judgment in favor of the Town of Windham with regard to Napier's
claim of "vicarious corporate liability" for the negligence of
Lewsen and the Ramsdells, and (2) AFFIRM the district court's
decision in all other respects. This case is REMANDED to the
district court for further proceedings consistent with this
opinion.