2012 ME 120

**STATE of Maine**

v.

**Joseph L. SILVA.**

Supreme Judicial Court of Maine.

Argued: Sept. 13, 2012.
Decided: Oct. 23, 2012.

Lisa Chmelecki, Esq. (orally), Mark Peltier, Esq., and Luke Rioux, Esq., Fairfield and Associates, Lyman, for appellant Joseph L. Silva.

Kathryn Slattery, District Attorney, and Anne Marie Pazar, Esq. (orally), Prosecutorial District # 1, Alfred, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1]   Joseph L. Silva appeals from a judgment of conviction for gross sexual assault (Class A), 17–A M.R.S. § 253(1)(A) (2011), and two counts of aggravated assault (Class B), 17–A M.R.S. § 208(1)(A), (C) (2011), entered in the trial court (*Brodrick, J.*) on a jury verdict.   Silva challenges the court's failure to sanction the State for what he asserts was a discovery violation and the court's exclusion of his computer expert from testifying at trial. We affirm the judgment.

## I.   BACKGROUND

[¶ 2]   Silva assaulted the victim, whom he had met through a dating website, on November 22, 2009.   She reported the assault two days later, and Silva was arrested in early December.   The State did not indict Silva on the charges of which he was ultimately convicted until April 6, 2010.[1]

[¶ 3]   In January of 2010, the State provided Silva with automatic discovery pursuant to M.R.Crim. P. 16(a);[2]   that discov-

---

1. The court (*Fritzsche, J.*) granted the State's motion for the complaint to remain on the docket in which the State cited "the complexity of the investigation and the seriousness of the offenses charged" as its "good cause." *See* M.R.Crim. P. 48(b)(2).

2. The State also agreed to provide any evidence discoverable pursuant to M.R.Crim. P. 16.

ery included an emergency room nurse's report referencing an item of evidence—the underpants the victim had worn at the time of the assault—that was not collected at the hospital or by police when the victim reported the crime.

[¶ 4] It was not until August of 2011, when the prosecutor was preparing for trial, that he realized the item had never been collected or analyzed. The victim had the item in her possession, but had washed the underpants one or more times in the months that had passed since the assault. Otherwise, there was no indication of where the item had been kept since 2009, what state it was in, or who else had access to it in those intervening two years. At the prosecutor's direction, police obtained the item of clothing.

[¶ 5] On September 12, 2011, the first morning of trial, Silva moved for sanctions against the State pursuant to M.R.Crim. P. 16(d), arguing that the State violated its discovery obligation by failing to provide the underpants or a report about any analysis of it. Silva sought either an opportunity to have the underpants analyzed or a dismissal of the indictment. In a chambers conference, the prosecutor reported to the court that he had informed Silva, who was unrepresented at the time,[3] as soon as the underpants came into police custody in August of 2011.[4] The court denied Silva's motion, noting that, given the reference to the item in the nurse's report provided to Silva more than a year earlier, both attorneys had been remiss in overlooking it. The court declined to continue the matter given the "disgraceful" seventeen-month delay from indictment to trial.

[¶ 6] Just before the start of trial, the parties were also engaged in a discovery dispute regarding Silva's computer expert. During their investigation, police had obtained and analyzed both Silva's and the victim's computer hard drives to determine the content of their online communications. On Silva's motion, the court ordered the State to provide a copy of the victim's hard drive to Silva for analysis by Silva's own expert. Silva's expert obtained that copy in March of 2011, but did not analyze it then because Silva was unable to pay her fee. After obtaining the copy a second time several days before the trial, the expert did analyze it. Five days before trial, Silva provided the State with a copy of the report his expert generated from that analysis, and three days before trial, Silva filed a designation naming the expert to testify. On the State's motion, the court excluded Silva's expert from trial after concluding that Silva failed to provide the State adequate notice. At trial, Silva called the State's computer expert as a witness, and questioned her extensively regarding the content of both computer drives.

[¶ 7] The jury found Silva guilty of all three counts, and the court entered a judgment on the verdict sentencing Silva to ten years in prison for the gross sexual assault count and seven years in prison for each of the aggravated assault counts, all to be served concurrently. The court also ordered Silva to pay restitution to the victim in the amount of $3192. After the court denied Silva's motion for a new trial, Silva appealed.

---

3. Silva was unrepresented for a period of about five months, until his attorney reentered his appearance eleven days before trial.

4. During the chambers conference, both parties and the court appeared to believe that the item was already at the crime lab. There is no suggestion that the prosecutor's representation of that fact was anything other than a misunderstanding, and Silva conceded during oral argument that there was no suggestion of the State's bad faith in making that representation.

## II. DISCUSSION

[¶ 8] Pursuant to M.R.Crim. P. 16 and a discovery order in this matter, the State was required to supply to Silva, inter alia, "[a]ny ... tangible objects ... which are material to the preparation of the defense or which the attorney for the state intends to use as evidence in any proceeding" if those items are "within the attorney for the state's possession or control." M.R.Crim. P. 16(b)(1), (2)(A). Silva contends that the court erred in declining to sanction the State for withholding information concerning its possession of the victim's item of clothing until just days before trial, resulting in a deprivation of his due process rights. We afford the trial court substantial deference in overseeing the parties' discovery, and review its decisions on alleged discovery violations only for an abuse of discretion. *State v. Graham*, 2010 ME 60, ¶ 10, 998 A.2d 339. Only when the defendant can establish that the effect is so significant as to deprive him of a fair trial will we vacate on that basis. *State v. Gould*, 2012 ME 60, ¶ 24, 43 A.3d 952.

[¶ 9] The court denied Silva's motion to dismiss the indictment or continue the trial based primarily on the procedural history of the matter. Although the crimes had occurred in November of 2009, the State did not charge Silva until more than four months later, in April of 2010. Silva was arraigned on May 21, 2010, and the court ruled on discovery issues on August 13, 2010. Between September of 2010 and August of 2011, eight docket calls were scheduled-and continued-in the matter. In total, the period from indictment to trial spanned more than seventeen months. Silva himself was responsible for much of the delay in this matter, having moved to continue the matter at least seven times. The court appropriately considered these substantial delays in evaluating Silva's motion seeking yet another continuance of the trial, and acted well within its discretion in denying Silva's motion for sanctions.

[¶ 10] In addition, the court's decision is supported on the merits. The United States Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution," when that suppression is prejudicial to the accused. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *see Gould*, 2012 ME 60, ¶¶ 22 n. 4, 28, 43 A.3d 952. Evidence is material when "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Gould*, 2012 ME 60, ¶¶ 22 n. 4, 27, 43 A.3d 952 (quotation marks omitted) (determining that no discovery violation had occurred when the evidence in dispute was disclosed "as soon as that evidence was reasonably available" (quotation marks omitted)). Here, given the circumstances—namely, the lack of an adequate chain of custody and the probable inadmissibility of the evidence on that basis; the likelihood, given Silva's admission to consensual contact, that any testing of the underpants could well have inculpated, rather than exculpated, Silva; the fact that the underpants were not in the State's custody until a short time before trial; and Silva's own failure to follow up on the existence of the underpants, which was disclosed to him in a nurse's report as early as January of 2010—we decline to conclude that the court's refusal to dismiss the indictment or continue the matter deprived Silva of a fair trial.

[¶ 11] Neither did the court exceed its discretion in excluding Silva's computer expert. *See State v. Kelly*, 2000 ME

107, ¶ 15, 752 A.2d 188. Maine Rule of Criminal Procedure 16A required Silva to disclose to the State certain information regarding his own expert witness: "[T]he defendant shall, within a reasonable time, furnish to the attorney for the state" the name and address of the expert and a copy of "any report or statement of an expert . . . which is within the defendant's possession or control and which the defendant intends to introduce as evidence in any proceeding." M.R.Crim. P. 16A(b)(2)(B).

[¶ 12] The court's determination that Silva did not fulfill his obligations pursuant to Rule 16A is supported by the record. The State received only a portion of the expert's report, and the court apparently determined that even the portion Silva did provide was not produced within a reasonable time. *See State v. Allen*, 2006 ME 20, ¶ 14, 892 A.2d 447 (affirming the exclusion of an expert's report when "[t]he timing of the disclosure placed the State in a position where it had insufficient time to prepare a cross-examination of the doctor concerning her recent findings, the new methods she used in arriving at them, or to find and prepare witnesses to rebut this late evidence"). Silva was also permitted to call as a witness the State's computer expert, whom he questioned extensively regarding the content of both hard drives. Thus, Silva was able to elicit much, if not all, of the testimony he wanted the jury to hear. He has identified no evidence beyond that elicited from the State's expert that he had hoped to elicit from his own expert. Given that the delay in supplying the expert report to the State was due to Silva's own failure to pay his expert, that the information supplied to the State days before trial was not complete, and the substantial deference afforded the trial court in determining the admissibility of expert testimony, we decline to disturb the judgment on this basis.

The entry is:

Judgment affirmed.