MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 63
Docket:        Yor-16-132
Argued:        February 8, 2017
Decided:       April 4, 2017

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

NICHOLAS W. GAGNE

ALEXANDER, J.

[¶1]  Nicholas W. Gagne appeals from a judgment of conviction for two counts of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(A) (2016), two counts of aggravated assault (Class B), 17-A M.R.S. § 208(1)(C) (2016), two counts of domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2016), and one count of domestic violence terrorizing (Class D), 17-A M.R.S. § 210-B(1)(A) (2016), entered by the trial court (York County, *O'Neil, J.*) following a seven-day jury trial.

[¶2]  On appeal Gagne argues that the trial court (1) abused its discretion by denying his motion for sanctions and a continuance based on the State's late disclosure of the victim's medical records; (2) violated the Confrontation Clause when it admitted a recorded interview of the victim,

2

who testified at trial but lacked present memory of details about the crime and what she had said to the interviewing detective; and (3) deprived him of a fair trial by declining to allow him to call two late disclosed witnesses not included on the witness list described to the jury.[1] We affirm the judgment.

## I. CASE HISTORY

[¶3] Viewing the evidence in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt.[2] *See State v. Morrison*, 2016 ME 47, ¶ 2, 135 A.3d 343. Nicholas Gagne and the victim, when they were both about twenty years old, met through a mutual friend in early 2013. They began dating, and soon the victim moved in with Gagne at a Saco home occupied by Gagne, Gagne's parents, and, for part of the time, Gagne's younger, adopted cousin. The victim worked at a supermarket in Scarborough; Gagne was not working due to disability.

---

[1] Gagne also asserts that the jury instructions, which he agreed to at trial, lacked sufficient specificity to inform him of the conduct for which he was convicted, which prevented him from preparing adequately for sentencing; that the court abused its discretion in denying his motions for a mistrial; and that certain statements made by the prosecutor during closing arguments constituted prosecutorial misconduct that resulted in obvious error. We do not find these arguments persuasive and do not discuss them further.

[2] Gagne does not challenge the sufficiency of the evidence to support the convictions. Our review of the record indicates that the evidence does support the jury's findings of guilt as to each charge. *See* 17-A M.R.S. §§ 207-A(1)(A) (domestic violence assault), 208(1)(C) (aggravated assault), 210-B(1)(A) (domestic violence terrorizing), 253(1)(A) (gross sexual assault) (2016).

[¶4]  In the summer of 2013, the victim, who has attention deficit and sensory integration issues that make it difficult for her to process information and regulate her emotions, went to Louisiana with her mother for several weeks of treatment.  Gagne disapproved of her trip and called her repeatedly while she was away, accusing her of cheating on him and making threats toward her parents and pet, including a threat to kill her father.

[¶5]  Within a week after the victim returned from Louisiana, she moved in with Gagne again.  Although the victim left Gagne repeatedly during their relationship, they remained together through early November 2013. When they were together, Gagne insisted on being with the victim at all times and did not allow her to visit friends or even to use the bathroom by herself. He kept her cell phone from her except when she went to work.

[¶6]  On the night of November 4, 2013, while the victim was with Gagne, he said he was going to have sex with her, even though she told him that she did not want to have sex with him.  He stated that he would rape her and there was nothing she could do about it.  When she got up to leave, he pushed her onto the bed in their room.  He strangled the victim with his hands and forced her to have sex with him even though she resisted.  She moved

4

around, kicked him, and told him to stop, but he penetrated her with his penis in several different ways. He also tried to put a stick in her anus.

[¶7] Afterward, the victim fell asleep. She did not have her phone because Gagne had taken it. She awoke in the morning to Gagne strangling her.

[¶8] Later that same day, November 5, 2013, the victim told her parents what had happened. The victim's mother took her to the hospital, where she was examined by a doctor and where a nurse completed a sexual assault kit. The victim was also interviewed at the hospital by a police detective who recorded the interview.

[¶9] On November 7, 2013, Gagne was charged by complaint with aggravated assault and was arrested. On March 4, 2014, he was charged by indictment with two counts of aggravated assault (Class B), 17-A M.R.S. § 208(1)(C) (2016); two counts of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(A) (2016); two counts of domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2016); two counts of domestic violence stalking (Class D), 17-A M.R.S. § 210-C(1)(A) (2016); two counts of domestic violence terrorizing (Class D), 17-A M.R.S. § 210-B(1)(A) (2016); one count of violating

a condition of release (Class C), 15 M.R.S. § 1092(1)(B) (2016); and one count of violating a protective order (Class D), 19-A M.R.S. § 4011(1) (2016).

[¶10]  From March 2014 until October 1, 2015, the case was scheduled for five "docket calls," all of which were continued, at least twice at Gagne's request.  On October 1, 2015, the court scheduled jury selection for January 19, 2016, with trial set to begin on January 25, 2016.  Three months after this schedule was created, and seven days before the jury was to be selected, Gagne filed a motion in limine, seeking the victim's medical records that he claimed were missing from the discovery materials that the State had provided.  On January 20, the court entered an order, after its in-camera review, authorizing the victim's medical providers to disclose the victim's otherwise protected health care information.  On that same day, a jury was selected.

[¶11]  Gagne moved for sanctions based on the State's delay in obtaining and providing the victim's medical records—one of which noted the presence of blood in the victim's vaginal vault.  He argued that the State had deprived him of the right to discover exculpatory or impeachment evidence in a timely manner, that all or some of the charges should be dismissed, that all

6

or some of the medical evidence should be excluded, or that the trial should be continued.

[¶12]  The court held an evidentiary hearing on that motion at which the investigating police detective and the District Attorney's trial manager testified.  In its order determining that there had been no discovery violation and therefore denying the motion for sanctions, the court found that the investigating detective obtained a medical release from the victim, and sent that release to Maine Medical Center (MMC) with a request that it provide all medical records concerning the victim.  The court also found that the detective sent to the District Attorney's office all of the records that he received from MMC, including records from the emergency department and a two-page checklist indicating that a Sexual Assault Nurse Examiner ("SANE") evaluation had occurred.  In addition, the court found that the DA's office had inadvertently failed to send the emergency department records to defense counsel until early January 2016, "when [an assistant district attorney], in preparation for trial, realized they had not been provided."  The ADA did not, however, notice that there was a SANE report missing until it was brought to his attention by Gagne's January 12, 2016, motion in limine.

[¶13]  Gagne argued that the State should have noticed that there was a missing report, and should have begun an inquiry to determine whether that report contained exculpatory or exonerative material.  The court, noting that the SANE report could have been obtained directly by Gagne, and that the State had "no reason to suspect that the material [contained in the SANE report] could have had such exonerative information," concluded that the State should not be sanctioned for failing to seek or provide records that it did not realize existed.  The court also found that Gagne would suffer no prejudice from proceeding with trial as scheduled, based on its determination that "further evaluation of the material would [not] result in some additional, or changed opinion. . . ."[3]

[¶14]  The jury trial was held over the course of seven days from January 25 to February 3, 2016.  The State presented testimony from the victim, her parents, law enforcement officers, a forensic chemist, a DNA analyst, and the medical professionals who examined the victim.

[¶15]  The victim testified about the events but said that she did not remember a lot of the details of what happened.  Because of the victim's lapse in memory, the State sought to play for the jury an audio recording of the

---

[3]  The SANE report contains a notation that the examiner saw a "significant amount of blood" in the victim's vaginal vault, but no tearing or lacerations.

detectives' interview of the victim at the hospital when she had reported the crimes. The State argued that the recording was admissible either as a prior consistent statement offered to rebut a claim of recent fabrication, *see* M.R. Evid. 801(d)(1), or a recorded recollection that accurately reflected the victim's knowledge and was made by the victim when the matter was fresh in her memory, whereas she could not recall the information well enough at trial to testify fully and accurately, *see* M.R. Evid. 803(5).

[¶16] In addition to the victim's testimony that she lacked memory of the details of what happened, the State offered, as a foundation for a recorded recollection, the victim's testimony that she remembered speaking with the detective; that she had a better memory of the events then, within twenty-four hours after the events; and that she was telling the truth during that interview. The court ruled that the recording was admissible as a recorded recollection, M.R. Evid. 803(5), and allowed it to be played to the jury over Gagne's objections, including his objection that he was being deprived of the right of confrontation. The court authorized Gagne to cross-examine the victim after the recording was played, but Gagne elected not to recall the victim to testify.

[¶17]  After the State presented its case, Gagne moved for a judgment of acquittal as to all counts.  The court granted the motion with respect to the counts alleging violation of a protective order and violation of a condition of release but denied the motion as to the remaining counts.  Gagne then presented testimony from several witnesses, including his adopted cousin, Gagne's father, friends of Gagne, and a Biddeford police officer who testified that no call came in related to an earlier near-arrest of Gagne that the victim claimed happened before he assaulted her.

[¶18]  Gagne's adopted cousin testified that Gagne had consensual sex with both the victim and her together on November 4 and that she had not overheard any altercation before or after that.  She also testified that the victim had told her on October 31, 2013, that she was pregnant.

[¶19]  As part of his case, Gagne sought to call two witnesses whom he had not listed before trial.  One was a classmate of the victim who was offered to testify, inter alia, that the victim (1) told the classmate that she had been raped by Gagne on a prior occasion, (2) stated that her parents had told her to make it up, and (3) was late for her period on November 4 and 5 because the two had the same cycle and the victim had said before Halloween that she was pregnant.  The other proposed witness was the classmate's mother, who was

offered to testify that she told the victim to go to the police if she had been raped, which had led the victim to say that the sex had been consensual and that her parents told her to make it up. The court excluded these witnesses' testimony because of the high level of prejudice to the State from their last-minute addition as witnesses and because these witnesses were not simply "rebuttal" witnesses.

[¶20] Gagne did not testify. The State presented its closing argument, during which it argued, "If what that nurse is seeing is easily explained as menstrual blood, she wouldn't have noted it. And if she did, she would have explained [the victim] said she was on her period."

[¶21] After the defense argued that the blood in the victim's vaginal vault could have been menstrual blood because she had been telling others that her period was late and she thought she was pregnant, the State argued in rebuttal, "Late for her period, nobody testified that she was ever on her period. The closest you got was [the victim] telling the nurse, I'm not sure if I've started my period." Gagne raised no objection to the State's arguments.

[¶22] The jury instructions that the court delivered were agreed to by Gagne and the State. For each charge, including the charges that were identical to each other, the court instructed the jury on the elements of the

offense.  The court also clarified, for the identical charges, that the State was alleging separate episodes and that each charge had to be determined independently.

[¶23]   The jury returned verdicts finding Gagne guilty of Counts 1 through 5 (two counts of gross sexual assault, two counts of aggravated assault, and one count of domestic violence terrorizing), and Counts 8 and 9 (both domestic violence assaults).  The jury found Gagne not guilty of Counts 6 (domestic violence terrorizing), 7 (domestic violence stalking), and 11 (domestic violence stalking).

[¶24]  At a later hearing, the court sentenced Gagne to twenty-two years in prison on Count 4 (gross sexual assault), with all but fifteen years suspended and six years of probation.  The court ordered that all other sentences run concurrently to Count 4.  For the other gross sexual assault charge (Count 3), the court sentenced Gagne to twelve years in prison, all but six years suspended, with three years of probation.  For the aggravated assaults, the court sentenced him to eight years, all but six suspended, and three years of probation for Count 5, and six years of probation for Count 1. The court sentenced him to six months in the county jail for each of the remaining counts—domestic violence terrorizing (Count 2) and the two

domestic violence assaults (Counts 8 and 9). The court also ordered him to pay a $200 fine.

[¶25] Gagne timely appealed. *See* 15 M.R.S. § 2115 (2016); M.R App. P. 2.

## II. LEGAL ANALYSIS

### A. Late Disclosure of Medical Records

[¶26] Gagne argues that the State's late production of medical records that were favorable and material to his defense prejudiced his case and deprived him of due process. He contends that the court abused its discretion in failing to order sanctions against the State for this discovery violation.[4]

[¶27] We review the denial of a motion for sanctions based on a discovery violation for an abuse of discretion. *See State v. Silva*, 2012 ME 120, ¶ 8, 56 A.3d 1230. The denial of a motion for sanctions will cause us to vacate a judgment "[o]nly when the defendant can establish that the effect is so significant as to deprive him of a fair trial." *Id.*

[¶28] "'[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material

---

[4] Gagne also argues that the prejudice to him was compounded by the State's failure to share with Gagne its notes from January 15, 2016, interviews of the victim and her parents until after jury selection. The record does not establish that Gagne preserved this issue and indeed fails to establish when the notes were provided or what they said. Gagne cannot demonstrate obvious error in these circumstances. *See State v. McBreairty*, 2016 ME 61, ¶ 23, 137 A.3d 1012.

either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution,' when that suppression is prejudicial to the accused." *Id.* ¶ 10 (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "The element of prejudice is satisfied if the undisclosed evidence is material—that is, the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *State v. Twardus*, 2013 ME 74, ¶ 32, 72 A.3d 523. "A reasonable probability of a different result exists where the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id*.

[¶29]   We have held that a defendant who was made aware of potentially exculpatory evidence before trial—even though soon before trial—was not deprived of due process. *See State v. Gould*, 2012 ME 60, ¶ 28, 43 A.3d 952 ("[B]ecause the court found that Gould was made aware of and, in fact, received the lab report prior to trial, he cannot succeed in his claim that his due process rights were violated."). "[W]hen the defendant is aware, before trial, of the exculpatory evidence alleged to have been withheld, he cannot claim that there has been an unfair trial in violation of due process." *Id*.

[¶30] In this appeal, Gagne makes generalized arguments about the "valuable impeachment evidence" contained in the medical records and the effect of the delay in obtaining them on his ability "to fully prepare to interrogate the authors of the records," to seek a medical expert and "to find and present witnesses to rebut or impeach the suppressed records." These generalized contentions do not, however, throw the outcome of the trial into question. The records are far from being categorically exculpatory, and Gagne effectively cross-examined the witnesses to highlight the inconclusive nature of the physical examination and the sexual assault evaluations. He also has not indicated what other exculpatory evidence could have been produced had he been aware of the records earlier. In these circumstances, because Gagne had the evidence before trial, it was not ultimately excluded, and the lack of sanctions or a continuance did not deprive Gagne of a fair trial. *See id.*; *see also Silva*, 2012 ME 120, ¶ 8, 56 A.3d 1230.

B.   Confrontation Clause

[¶31] Gagne contends that his right of confrontation was violated when the court allowed the recorded interview of the victim to be played because she could not remember a lot of what happened. He argues that the recording was testimonial and that, because of the victim's lack of memory of the

interview, cross-examination about its contents was impossible. Pressing only his constitutional argument, Gagne does not argue that the court erred in applying M.R. Evid. 803(5) to admit the recording as a past-recorded recollection.[5] *See State v. Discher*, 597 A.2d 1336, 1341 (Me. 1991).

[¶32] "We review application of the Confrontation Clause de novo." *State v. Tozier*, 2015 ME 57, ¶ 16, 115 A.3d 1240. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. When testimonial evidence, such as a statement made in response to a police interrogation, is offered at a trial where the declarant does not appear, "the Sixth Amendment demands what the common law required: unavailability [of the declarant to testify at trial] and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

[¶33] When the declarant is available for cross-examination, "[t]he Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion." *United States v. Owens*, 484 U.S. 554, 558 (1988). The

---

[5] Nonetheless, the State laid a proper foundation for the recording to be admitted pursuant to the recorded recollection exception to the rule against hearsay, M.R. Evid. 803(5), and the trial court did not abuse its discretion in admitting the recording. *See State v. Cruthirds*, 2014 ME 86, ¶ 20, 96 A.3d 80; *State v. Discher*, 597 A.2d 1336, 1341 (Me. 1991).

Clause guarantees "an opportunity for effective cross-examination" but does not guarantee that the cross-examined witness will have full memory. *Id.* at 559-60. "[A] witness is not constitutionally unavailable for purposes of Confrontation Clause analysis when a witness who appears and testifies is impaired." *State v. Gorman*, 2004 ME 90, ¶ 52, 854 A.2d 1164. "'[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.'" *Id.* ¶ 55 (quoting *Crawford*, 541 U.S. at 59 n.9).

[¶34]   Thus, the Supreme Court of the United States affirmed the admission of a witness's prior identification of his attacker while he was recovering in the hospital from a severe beating even though he could not, at the time of trial, remember having seen his assailant or having had visitors other than the interviewing police officer while he was in the hospital. *Owens*, 484 U.S. at 556, 560-61. We have similarly held that the Confrontation Clause was not offended by the admission of grand jury testimony from a defendant's mother, who testified that she did not remember the grand jury proceedings, because the defendant had "the opportunity to examine and cross-examine his mother before the jury regarding what she did and did not recall and the reasons for her failure of recollection." *Gorman*, 2004 ME 90,

¶¶ 15, 55, 854 A.2d 1164. We also upheld the admission of a 9-1-1 recording when the defendant had the opportunity to cross-examine the caller at trial, even if that opportunity came after the initial direct testimony and cross-examination of the victim. *State v. Cruthirds*, 2014 ME 86, ¶¶ 15-20, 96 A.3d 80.

[¶35] Here, the victim testified at trial and explained her loss of memory of the details of events.[6] She underwent extensive cross-examination regarding the various statements she made to others. After the recording was played during the interviewing detective's testimony, Gagne was permitted to recall the victim as a witness, but he chose not to do so. Because the victim was available and Gagne had the opportunity to recall the victim for cross-examination after the recording was played for the jury—even though he ultimately chose not to do so—there is no violation of the Confrontation Clause.[7]

---

[6] This is not a situation as in *Goforth v. State*, 70 So. 3d 174 (Miss. 2011), cited by Gagne, where the court concluded that the Confrontation Clause had been violated because a witness had suffered a complete loss of memory, even if the people involved, due to injuries sustained in an unrelated car accident after the relevant events. *Id.* at 180, 187.

[7] Although the court seemed to indicate that Gagne could only recall the victim to examine her on the newly introduced evidence due to Gagne's previous extensive cross-examination about the victim's loss of memory, the court never explicitly denied nor had the chance to directly address Gagne's right to recall the victim on other issues because Gagne chose not to recall her during his case-in-chief. The victim was available to be recalled and Gagne elected not to do so.

C.      Refusal to Allow Witnesses to Testify

[¶36]   Gagne argues that his defense was prejudiced by the court's refusal to allow the victim's classmate and that classmate's mother to testify. He contends that their testimony became necessary after he read the medical records that he discovered just before trial and heard the victim's testimony, which was not consistent with her earlier interview.

[¶37]   The court precluded Gagne from calling the two witnesses who were not on his witness list, partly because the inclusion of the witnesses' testimony would prejudice the State because the witnesses were not identified until after a jury had been selected, and partly because of the risk that any of the already-seated jurors might know one of the witnesses.  The court specifically stated that it was "not convinced" by Gagne's argument that it was in response to surprise State evidence that Gagne developed "the theory . . . that this was, in fact, motivated by the desire of [the victim's] parents to not have her have a relationship with Mr. Gagne."  The court's determination, although resulting in the exclusion of evidence, did not deprive Gagne of a fair trial, especially given that the anticipated testimony would include reports from the victim to her classmate and that classmate's mother

that Gagne had raped the victim on a prior occasion. *See State v. Allen*, 2006 ME 20, ¶¶ 13-15, 892 A.2d 447.[8]

[¶38]  "The right[] . . . to call witnesses in one's own behalf ha[s] long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).  However, parties are obligated to reveal the names of all potential witnesses that could be reasonably anticipated, prior to voir dire, regardless of whether counsel plans to call the witness as part of their case in chief or in rebuttal. *See Rich v. Fuller*, 666 A.2d 71, 74 (Me. 1995); *State v. Collin*, 441 A.2d 693, 696 (Me. 1982).  Undisclosed witnesses may be excluded. *See Joy v. Marston*, 581 A.2d 418, 419 (Me. 1990).  "Late disclosure may unduly highlight a witness's testimony." *Maine Jury Instruction Manual*, § 2-3 at 2-5 (2016 ed.).  The court did not err or abuse its discretion in excluding the late disclosed witnesses here.

[¶39]  It also must be noted that the excluded testimony would not necessarily have been as purely exculpatory as Gagne characterizes it, given other testimony about previous bruises that the victim's mother saw on her. Moreover, another witness—the adopted cousin—did testify that the victim had mentioned thinking she was pregnant in late October 2013, and therefore

---

[8]  We note that Gagne had nearly two years between the indictment and jury selection to find, interview, and identify these witnesses.

Gagne was not deprived of the opportunity to present evidence of a possibly late menstrual cycle.

The entry is:

Judgment affirmed.

---

Valerie A. Randall, Esq. (orally), Fairfield & Associates, P.A., Portland, for appellant Nicholas W. Gagne

Kathryn Loftus Slattery, District Attorney, Anne Marie Pazar, Asst. Dist. Atty., and Thomas R. Miscio, Asst. Dist. Atty. (orally), Prosecutorial District 1, Alfred, for appellee State of Maine

York County Superior Court docket number CR-2013-2696
FOR CLERK REFERENCE ONLY