MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 132
Docket:      Fra-18-444
Argued:      June 12, 2019
Decided:     August 13, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM,* JJ.

# STATE OF MAINE

v.

# ROSS S. ADAMS

HJELM, J.

[¶1]  In 2018, Ross S. Adams was convicted of unlawful sexual contact (Class A), 17-A M.R.S. § 255-A(1)(F-1) (2018), in the Unified Criminal Docket (Franklin County, *Mullen, J.*) after a jury trial.  During the State's direct examination of the victim at the trial, the court admitted in evidence as past recollection recorded, *see* M.R. Evid. 803(5), a video recording of a forensic interview that had been conducted of the victim shortly after the crime occurred in 2014, when she was seven years old.  On appeal, Adams asserts that the court's evidentiary ruling was erroneous because the State had not established the proper foundation required by that exception to the hearsay

---

*  Although not present at oral argument, Justice Hjelm participated in the development of this opinion. *See* M.R. App. P. 12(a)(2).

2

rule and because the admission of the video violated his constitutional right to confront the witness, *see* U.S. Const. amend VI.[1]  We affirm the judgment.

## I.  BACKGROUND

[¶2]  We draw the following account of this case from the evidence as seen in the light most favorable to the State, *see State v. Pelletier*, 2019 ME 112, ¶ 2, --- A.3d ---, and from the procedural record.

[¶3]  In the fall of 2013, the victim was six years old and lived in Massachusetts with her mother.  The mother became romantically involved with Adams, and shortly after that relationship began, Adams moved into the mother and victim's home and, around the same time, started sexually abusing the victim.

[¶4]  In July of 2014, Adams, the mother, and the victim moved to Farmington.  From that time until October 9, 2014, Adams repeatedly sexually assaulted the victim, sometimes inside the house and other times outside, by touching her genitals and digitally penetrating her.

---

[1]  Adams also contends that the evidence is insufficient to support the verdict.  For reasons that are evident in this opinion, we are not persuaded by that contention and do not discuss it further. *See State v. Moores*, 2006 ME 139, ¶ 7, 910 A.2d 373 (stating the standard of review on a challenge to the sufficiency of the evidence supporting a guilty verdict); *see also State v. Hodgdon*, 2017 ME 122, ¶ 21, 164 A.3d 959 ("A jury is permitted to draw all reasonable inferences from the evidence, and decide the weight to be given to the evidence and the credibility to be afforded to the witnesses." (quotation marks omitted)).

[¶5]   On October 10, 2014, the victim travelled to Florida to visit her father.   A few days later, she disclosed the abuse to her father.   He contacted Florida's child services agency, which opened an investigation that led to a forensic interview conducted of the victim on October 20, 2014.   The victim remained with her father in Florida and was still living with him when the trial was held in 2018.

[¶6]   In November of 2014, Adams was charged with one count of unlawful sexual contact of a child under the age of twelve, with penetration, 17-A M.R.S. § 255-A(1)(F-1).   After he was indicted for that charge several months later, he pleaded not guilty.

[¶7]   The court conducted a two-day jury trial in June of 2018.[2]   On the first day of the trial, the State presented the testimony of the victim's mother and the victim, who then was eleven years old.   During the State's examination of the victim, she testified that Adams had abused her a "lot" of times and that the incidents occurred both inside and outside the house where they were living.   The victim recalled one specific incident that had occurred outside the house; she testified to conduct by Adams that would satisfy the elements of the charge, and she also described some of the surrounding circumstances.   When

---

[2] The case remained pending for more than three years due to multiple continuances.

4

asked about incidents of abuse that had occurred inside the house, the victim testified that there had been more than one such incident, that she thought that one had occurred in a bedroom, but that she did not have a specific memory of a particular incident. When the State inquired about the forensic interview, the victim testified that she remembered talking to the interviewer in Florida, that she had a clear memory of the abuse then, and that she had told the interviewer the truth.

[¶8]  Based on that testimony, the State offered in evidence the video recording of the forensic interview.[3]  The court viewed the recording out of the jury's presence, heard argument from the parties, and, over Adams's objection, determined that the State had developed a proper foundation for the portions of the recording relating to incidents of abuse inside the house to be admitted as past recollection recorded.  *See* M.R. Evid. 803(5).

[¶9]  Given that ruling and after carefully preserving his objection to it, Adams agreed that most of the remaining portions of the recording could be

---

[3]  On the first day of the trial, before the jury was sworn, Adams sought permission from the court to use portions of the recording during his cross-examination of the victim.  The State asserted that, if Adams did so, the rule of completeness would allow the whole recording to be published to the jury.  *See* M.R. Evid. 106 ("If a party utilizes in court all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the time.").  The court deferred ruling on the issue until later in the trial but, given the developments at trial that are the subject of this appeal, did not need to address the issue.

admitted in evidence. This approach allowed Adams to cross-examine the victim about potential inconsistencies between her testimony and her statements on the recording. The recording was played for the jury while the victim, by agreement of the parties, remained outside the courtroom. In the recording, the then-seven-year-old victim told the interviewer details about the abuse that had taken place inside the house—what Adams did to her, where it happened, where her mother was at the time, and how it made her feel. The victim told the interviewer that the last time Adams had abused her was the day before she left Maine to visit her father in Florida.

[¶10] After the video was played for the jury, the victim resumed her testimony and was cross-examined by Adams, during which he replayed parts of the recording to set up some of his questions. While testifying, the victim could not remember saying certain things to the forensic interviewer four years earlier, and she was unable to recall details of the incidents of abuse about which Adams was questioning her.

[¶11] The jury found Adams guilty of the single count of unlawful sexual contact. The court later denied Adams's motion for a new trial, *see* M.R.U. Crim. P. 33, or judgment of acquittal, *see* M.R.U. Crim. P. 29(b), and sentenced

6

Adams to a seventeen-year prison term with all but ten years suspended and ten years' probation. This appeal followed. *See* 15 M.R.S. § 2115 (2018).

## II.  DISCUSSION

[¶12]  Adams asserts that, for two reasons, the court erred by admitting evidence of the victim's out-of-court statements contained in the recording. First, Adams argues that the State failed to develop a proper foundation for past recollection recorded as required by Maine Rule of Evidence 803(5) and our interpretive caselaw.[4]  Second, Adams contends that even if the recording were admissible pursuant to the Maine Rules of Evidence, its admission violated his Sixth Amendment right to confront a witness against him because, given the victim's limited memory at trial, he was unable to "reasonably cross-examine" her about her recorded statements. *See* U.S. Const. amend. VI.  We address these contentions in turn.[5]

---

[4]  Adams's argument regarding the foundational elements of Rule 803(5) is based on the rule as it appeared before the Maine Rules of Evidence were restyled in 2015.  Because the trial was held after the Rules were restyled and, in any event, the restyling was not intended to make any substantive changes to the Rules, *see* M.R. Evid. Advisory Committee's Note to 2015 amend., we address his argument as framed by the restyled Rule 803(5).

[5]  After the court ruled, over Adams's objection, that portions of the recording would be admitted in evidence, Adams agreed that much of the remainder of the recording could be admitted as well. We address only the admissibility of the statements to which Adams objected.

A.    Maine Rule of Evidence 803(5)

[¶13]  "We review the court's foundational findings or implicit findings to support admissibility of evidence for clear error, and we will uphold those findings unless no competent evidence supports the findings."  *State v. Cruthirds*, 2014 ME 86, ¶ 16, 96 A.3d 80 (quotation marks omitted).  The court's ultimate determination that evidence is "admissible as a recorded recollection is deferentially reviewed for an abuse of its considerable discretion."  *Id.* ¶ 17 (quotation marks omitted).  Here, the court did not make explicit foundational findings and was not asked to do so, although the court's ruling followed an extended colloquy with counsel during which the applicable legal principles were explicitly articulated by both the court and the parties.

[¶14]  Pursuant to the recorded recollection exception to the hearsay rule, evidence is not excluded by the general rule barring the admission of hearsay when the out-of-court statement satisfies the following requirements: (1) it relates to a matter the witness once knew about but cannot recall well enough at trial to testify fully and accurately; (2) it was made or adopted by the witness when the matter was fresh in the witness's memory; and (3) it is an accurate record of the witness's past knowledge.[6]  *See* M.R. Evid. 803(5); *see*

---

[6]  The recorded recollection exception to the hearsay rule also provides that "[i]f admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse

*also State v. Gorman*, 2004 ME 90, ¶ 27, 854 A.2d 1164. These foundational criteria may be established "independent of the declarant's testimony as to present memory." *Gorman*, 2004 ME 90, ¶ 29, 854 A.2d 1164. When the witness is unable or unwilling to testify from present memory, "it is within the discretion of the trial court to determine whether the foundational requirements of Rule 803(5) have been satisfied on a case-by-case basis, whether by direct or circumstantial evidence." *Id.* ¶ 28 (quotation marks omitted).

[¶15] The first foundational element as stated above actually has two components that focus on different timeframes: the predicate evidence must show that, at the time the declarant made the out-of-court statement, she knew about the subject of the statement, and it must show that, at the time the

---

party." M.R. Evid. 803(5). Because the out-of-court statements were contained in a video recording, the appropriate way for the evidence to be presented to the jury was for the recording to be played for the jury, which is what happened here. *See* M.R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a statute provides otherwise."). Once the court ruled that many of the victim's hearsay statements were admissible, Adams did not object to the State playing the video recording for the jury, as opposed to a transcript of the video being "read into evidence," and Adams confirmed at oral argument that, compared to the use of a transcript, using the recording at trial had strategic benefits for him.

We also note that, pursuant to that aspect of Rule 803(5), the court correctly directed that, even though the recording was admitted in evidence, it was to be played for the jury in the courtroom and would not accompany the jury into the jury room during deliberations. *See United States v. Dazey*, 403 F.3d 1147, 1168 (10th Cir. 2005) (stating that the "rationale . . . for requiring that [recorded hearsay statements] be read aloud into the record rather than received into evidence is so that the 'past recollection recorded' evidence is treated on par with the oral testimony presented at trial.").

declarant testifies at trial, her recollection has failed to the point where she is unable to testify about the matter fully and completely. *See* M.R. Evid. 803(5)(A). Here, the court did not err by implicitly finding that both of these circumstances existed. In the video, the victim, who then was seven years old, told the interviewer about her life in Maine, about the acts that Adams committed against her while she was living there, and specifically and in detail about the assaults that took place inside the house. Further, at trial the victim testified that, although Adams had sexually assaulted her numerous times inside the house, she generally could not remember where the abuse had occurred and did not have a clear or specific memory of the other aspects of that abuse. The record supports the court's implicit foundational findings that the victim's recorded descriptions of Adams's assaults against her were of matters she once knew about but, at trial, could not recall well enough to testify fully and accurately.

[¶16] The court was also entitled to find that the State had presented evidence to satisfy the second criterion for admission of the recording, namely, that the victim had made the statements when her memory of the abuse was fresh. *See* M.R. Evid. 803(5)(B). As described in the interview, the sexual assaults occurred from July to October of 2014—a span of approximately three

months ending eleven days before the victim was interviewed. As we note above, in her hearsay statements the victim demonstrated a strong memory of Adams's conduct committed against her inside the house. And during the State's direct examination, the victim testified that when she talked to the interviewer, her memory of the abuse was better than it was at the time of the trial, and she agreed that, at the time of the interview, she had "a clear memory of what had happened in Maine." Consequently, the trial court did not clearly err in its determination that when the victim was interviewed, her memory of Adams's assaults against her in the house was fresh. *See Gorman*, 2004 ME 90, ¶ 33, 854 A.2d 1164 (concluding that statements made about an event two months after it occurred were made when the witness's memory was fresh); *see also United States v. Smith*, 197 F.3d 225, 231 (6th Cir. 1999) (stating that "[s]ome courts have found periods from ten months to three years to be 'fresh'").

[¶17] Finally, the trial court was entitled to find that the State had demonstrated the third condition for the hearsay to be admissible—that the victim's statements during the interview accurately reflected her knowledge of the matter as of the time of the interview. *See* M.R. Evid. 803(5)(C). This foundational element is intended, in part, to ensure that the declarant was

speaking truthfully when she made the out-of-court statements.[7] *See Gorman*, 2004 ME 90, ¶¶ 36-40, 854 A.2d 1164. In this case, the victim confirmed at trial that she remembered that she "went and talked to a lady in a room, and [the lady] asked [the victim] the kind of questions" the State was asking her at trial and that she had told the interviewer the truth. At the beginning of the interview, which was well-structured and featured nonleading questions, in several different ways the interviewer discussed with the victim what "the truth" is, ensured that the victim understood that they "were going to talk about things that are true," and emphasized that they would "talk about *only* the truth." For foundational purposes—leaving the ultimate question of credibility for the jury to decide—these statements and the victim's responses, which indicated her understanding of what it means to tell the truth, along with other

---

[7] An additional purpose of this criterion is to establish the authenticity of the record presented. *See State v. Gorman*, 2004 ME 90, ¶¶ 36, 40, 854 A.2d 1164 (affirming a court's determination that a transcript and audio recording of prior grand jury testimony had sufficient indicia of accuracy after a court reporter testified and "identified [the declarant] as the person who gave the testimony, and established that the transcript and the audiotape accurately recorded her testimony"). Adams asserts on appeal that the State failed to provide any evidence that the video recording used at trial showed the same interview that the victim described in her testimony. Adams did not raise this issue during the trial and therefore has not preserved it for appellate review. *See State v. Jones*, 2019 ME 33, ¶ 23, 203 A.3d 816. Beyond that, on this record the authenticity of the recording is not called into question. For example, before the trial began, Adams received permission from the court to be able to use the recording during his cross-examination of the victim, and when he played a portion of the recording during his cross-examination of the victim, he referred to it as "part of the recording of the interview that took place in Florida on October 20, 2014." Furthermore, the video recording itself is time-stamped as October 20, 2014, which is within the period when the father testified that he took the victim to the forensic interview after learning about the abuse from her a week earlier. And there is no indication in the record that there was more than one interview of the victim.

indicia of truthfulness, constituted a sufficient predicate demonstration that the victim's out-of-court statements accurately described the assaults committed against her by Adams and were worthy of a jury's consideration. *See State v. Discher*, 597 A.2d 1336, 1342 (Me. 1991) (explaining that indicia of reliability include the likelihood that the witness would have lied during the earlier created record, or the witness's current motivation to forget earlier made statements that could now prove incriminating).

[¶18]  In sum, acting in its gatekeeping role, the court did not err by determining that the State had satisfied the foundational elements of the recorded recollection exception to the hearsay rule.

B.    Right of Confrontation

[¶19]  Adams also contends that the victim's memory of the forensic interview and the incidents of abuse she described there was so limited at trial that he was unable to "reasonably cross-examine" her, and thus the admission of the recorded interview violated his constitutional right to confront a witness brought against him. *See* U.S. Const. amend. VI.  "We review application of the Confrontation Clause de novo." *State v. Gagne*, 2017 ME 63, ¶ 32, 159 A.3d 316 (quotation marks omitted).

[¶20]   The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  Pursuant to this constitutional protection, if a witness does not testify at trial, a court may admit that witness's testimonial out-of-court statements "only where the defendant has had prior opportunity to cross-examine" the declarant.  *Gorman*, 2004 ME 90, ¶ 50, 854 A.2d 1164 (quotation marks omitted).[8]  For that reason, statements that are admissible pursuant to the rules of evidence—such as the recorded recollection exception at issue here—"may be inadmissible when tested against the Confrontation Clause."  *Id.* ¶ 46.

[¶21]   When the declarant *is* available for cross-examination at trial, however, a defendant's Sixth Amendment right to confront the witness is *not* compromised, regardless of the strength of the declarant's memory.  *Gagne*, 2017 ME 63, ¶ 35, 159 A.3d 316; *Gorman*, 2004 ME 90, ¶¶ 52-55, 854 A.2d 1164.

> When the declarant is available for cross-examination, "the Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is

---

[8]  For purposes of the Confrontation Clause, testimonial statements are out-of-court statements made primarily "to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also State v. Metzger*, 2010 ME 67, ¶ 15, 999 A.2d 947. The victim's out-of-court statements here were in response to questions posed during a forensic interview and are clearly testimonial.  *See State v. Jones*, 2018 ME 17, ¶ 9, 178 A.3d 481; *see also Michigan v. Bryant*, 562 U.S. 344, 355-71 (2011) (discussing the primary purpose determination). The State does not contend otherwise.

marred by forgetfulness, confusion, or evasion." *United States v. Owens*, 484 U.S. 554, 558, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). The Clause guarantees "an opportunity for effective cross-examination" but does not guarantee that the cross-examined witness will have full memory. *Id.* at 559-60, 108 S.Ct. 838. "A witness is not constitutionally unavailable for purposes of Confrontation Clause analysis when a witness who appears and testifies is impaired." *State v. Gorman*, 2004 ME 90, ¶ 52, 854 A.2d 1164. "'When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.'" *Id.* ¶ 55 (quoting *Crawford* [*v. Washington*, 541 U.S. 36], 59 n.9, 124 S.Ct. 1354 [(2004)]).

*Gagne*, 2017 ME 63, ¶ 33, 159 A.3d 316 (alterations omitted).

[¶22]  That is the case here.  The victim testified at trial and was available for Adams to cross-examine her about the statements she had made during the interview.  Therefore, despite the victim's imperfect memory at trial, Adams's rights under the Confrontation Clause were not offended by the admission of the victim's prior testimonial statements made during the recorded forensic interview.[9]

---

[9]  Adams also asserts that because he was unable to cross-examine *the interviewer* in the video about her methods, his rights under the Confrontation Clause were violated.  Adams failed to raise this particular argument to the trial court and thus has not preserved the issue for review. *See State v. Ngo*, 2007 ME 2, ¶ 7, 912 A.2d 1224.  Nonetheless, Adams's contention is unavailing.  The Confrontation Clause "bars admission of testimonial statements of a witness who did not appear at trial." *Davis*, 547 U.S. at 821 (quotation marks omitted).  While the recording contains statements made by the interviewer, who was not called to testify at trial, the interviewer's statements were not testimonial but merely provided a context to understand the victim's statements. *See King v. Kentucky*, 554 S.W.3d 343, 362-63 (Ky. 2018) (holding that the interviewer's statements, made during a recorded forensic interview of an abused child, were nontestimonial because they were meant to "encourage [the victim] to give more detail without asserting independent knowledge"); *Arizona v. Martin*, 235 P.3d 1045, 1049-50 (Ariz. Ct. App. 2010) (holding that the questions of an

## III. CONCLUSION

[¶23]  The court did not err when it admitted in evidence as past recollection recorded the video recording in which the victim described Adams's assaults of her inside the home.  Furthermore, Adams's constitutional right of confrontation was not violated by the admission of that evidence because he was provided the opportunity to cross-examine the victim about her out-of-court statements.

The entry is:

Judgment affirmed.

---

John Scott Webb, Esq. (orally), and Katherine M. Campbell, Esq., Saco, for appellant Ross S. Adams

James A. Andrews, Dep. Dist. Atty. (orally), Franklin County District Attorney Office, Farmington, for appellee State of Maine

Franklin County Unified Criminal Docket docket number CR-2014-1059
FOR CLERK REFERENCE ONLY

---

interviewer of a child sexual abuse victim, heard on a video recording, were not testimonial). Adams's Sixth Amendment rights were not implicated by the absence of the interviewer at trial.