1998 ME 8

**STATE of Maine**

v.

**Philip NAPIER.**

Supreme Judicial Court of Maine.

Argued Dec. 2, 1997.

Decided Jan. 8, 1998.

---

Stephanie Anderson, District Attorney, Julia A. Sheridan, Asst. Dist. Atty. (orally), Portland, for the State.

Terri M. Kosoff (orally), Westbrook, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

[¶ 1] Philip Napier appeals from the judgments entered in the Superior Court (Cumberland County, *Calkins, J.*) following a jury verdict finding him guilty of criminal threatening with a dangerous weapon, 17–A M.R.S.A. §§ 209, 1252(4) (1983), reckless conduct with a dangerous weapon, 17–A M.R.S.A. § 211 (1983), and discharging a firearm near a dwelling, 12 M.R.S.A. § 7406(13) (1994). Napier contends that his convictions should be vacated on the following grounds: (i) testimony by Napier's expert witness on acceptable police procedures for emergency police calls involving mentally disturbed individuals was improperly exclud-ed by the court; and (ii) Napier's conduct did not satisfy the elements necessary to convict him as a matter of law of reckless conduct with a dangerous weapon. We disagree and affirm the judgments.

[¶ 2] After the Windham police received a number of telephone calls from neighbors of Philip Napier reporting that Napier was firing a weapon from his home, Officer Richard Ramsdell (Richard) was dispatched to Napier's residence to investigate. Richard parked his cruiser in Napier's driveway, cautiously approached Napier's residence on foot, gun holstered, and searched Napier's yard to determine if Napier was outside. Richard then waited for backup to arrive before he approached the house itself. After Sergeant Ronald Ramsdell (Ronald), Richard's brother, arrived, Richard walked to Napier's open front door and at least twice yelled "Police department, Phil, are you here?". Peering into Napier's home, Richard noticed a rifle lying on a table and a hand holding a gun extending out of a doorway inside the house. Richard repeatedly shouted to the individual, who was Napier, "Police, drop the gun." Napier then walked toward Richard with his gun at hip level pointed at Richard. Richard leapt over a woodpile located on the porch and Napier peered over the woodpile pointing his revolver at Richard. Richard then ran around the corner of Napier's house, firing a shot in retreat which missed Napier. When Ronald observed Napier raise his gun towards Richard he fired at Napier, striking him. Wounded by Ronald's fire, Napier retreated into his house where he was then subdued by the officers.

[¶ 3] Prior to trial, the court ruled on the parties' motions in limine, *inter alia*, excluding the proposed expert testimony of Melvin L. Tucker, who was offered by Napier to testify as to proper police procedures in handling emergencies involving mentally disturbed persons. At the close of the State's evidence Napier moved for a judgment of acquittal, which the court denied. Also denied was his subsequent motion to dismiss counts III and IV on the ground that threatening with a weapon alone does not constitute reckless conduct with a dangerous weapon. In addition, Napier moved for a finding

that the police entry on his property was illegal. The court did not rule on this motion but rather submitted the issue of whether Napier was justified in using deadly force against the officers to the jury. The jury found Napier guilty of criminal threatening with a dangerous weapon, 17–A M.R.S.A. § 209, 1252(4), reckless conduct with a dangerous weapon, 17–A M.R.S.A. § 211, and discharging a firearm near a dwelling, 12 M.R.S.A. § 7406(13). This appeal followed.

## I.

■ [¶ 4] Napier claims that the trial court abused its discretion in excluding the expert testimony of a veteran law enforcement officer on the subject of appropriate police procedures—primarily in situations involving mentally disturbed individuals. Napier contends that the expert would have shown that the police officers did not follow proper police procedures, thus shedding light on whether Napier's conduct was a reasonable response to the officers' conduct. Napier claims that the lay juror requires assistance by an expert to determine what procedures, if any, were properly employed in this case.

■ [¶ 5] An expert opinion must be relevant to an issue in the case. *State v. Lewis*, 584 A.2d 622, 626 (Me.1990); Field & Murray, *Maine Evidence* § 702.1 at 337 (4th ed.1997). We review a trial court's determination of relevancy for clear error. *State v. Robinson*, 628 A.2d 664, 666 (Me.1993); *State v. Dechaine*, 572 A.2d 130, 133 (Me.1990).

[¶ 6] Pursuant to 17–A M.R.S.A. § 108(2)(A)(1), a person is justified in using deadly force upon another person "[w]hen the person reasonably believes it necessary and reasonably believes such other person is ... [a]bout to use unlawful, deadly force against himself...." The jury was asked to consider whether Napier was justified in his use of deadly force when he exited his home armed with a loaded weapon pointed at an announced uniformed officer. Regardless of whether the officers' actions conformed to proper police procedure, the only issue before the jury was whether a reasonable person in Napier's position would believe unlaw-

ful deadly force was about to be used against him.

[¶ 7] Assuming, *arguendo*, that the police did not follow proper procedure and Napier thus believed they were unlawful trespassers, the issue remains whether his reaction was reasonable. For example, assuming the officers in this instance should not have had their weapons drawn as they approached Napier's house, or should not have approached Napier's house at all, the jury still would consider only the reasonableness of Napier's reaction to these facts. The reasonableness of Napier's reaction is not a function of the officers' technical adherence to proper police procedure. Though non-adherence to police procedure may create circumstances supporting a justification defense, the circumstances, not the nonadherence to police procedure, supports the defense. Expert testimony on proper police procedure is thus irrelevant. The court did not exceed the bounds of its discretion in ruling that the testimony of an expert on police procedure was irrelevant to the issue of Napier's justification defense.

## II.

■ [¶ 8] Finally, Napier claims that merely pointing a weapon in a threatening manner does not constitute reckless conduct with a dangerous weapon. Pursuant to 17–A M.R.S.A. § 211, one is guilty of reckless conduct if one recklessly creates "a substantial risk of serious bodily injury to another person." The dispositive question is whether recklessly pointing a gun at someone can create a substantial risk of serious bodily injury.

[¶ 9] As the Supreme Court of North Dakota noted in *State v. Meier*, 422 N.W.2d 381, 385 (N.D.1988), "the potential for harm exists any time a firearm is pointed at a person ... what the [reckless endangerment] statute does is protect against the risk of such injury or death, and that is the risk that is to be avoided." Napier may not have intended to fire his weapon any more so than the defendant in *State v. DeCesere*, 406 A.2d 616, 617 (Me.1979), intended to shatter the police car safety glass when he kicked it. Liability for reckless conduct turns on the creation of risk, not actual harm. Risk turns on what is

possible, not necessarily on what is probable, and in this case Napier's pointing a loaded gun at a police officer created the risk that the firearm might be discharged causing grave injury to the responding officers.

The entry is:

Judgments affirmed.