MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME 53
Docket:       Yor-19-234
Argued:       February 12, 2020
Decided:      April 23, 2020

Panel:        MEAD, GORMAN,* JABAR, and HUMPHREY, JJ.**

STATE OF MAINE

v.

RONALD PAQUIN

MEAD, J.

[¶1]  Ronald Paquin appeals from a judgment of conviction for eleven counts of gross sexual misconduct (Class A), 17-A M.R.S.A. § 253(1)(B) (Supp. 1985),[1] entered by the trial court (York County, *Douglas, J.*) following a jury trial.  Paquin contends that the court erred in (1) declining his request to compel the State to obtain the victim's criminal history on the second day of the trial; (2) admitting expert testimony concerning the phenomenon of delayed

---

  *  Although not available at oral argument, Justice Gorman participated in the development of this opinion.  *See* M.R. App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

  **  Although Chief Justice Saufley participated in this appeal, she resigned before this opinion was certified.

  [1]  Title 17-A M.R.S.A. § 253 has been amended many times since the criminal conduct at issue occurred and is codified in its current version at 17-A M.R.S. § 253 (2018).

reporting by male victims of sexual abuse; (3) failing to rule sua sponte that the Double Jeopardy Clause barred convictions on both Counts 5 and 30; (4) giving a deficient "on or about" jury instruction on Count 31; (5) declining to allow a police detective to testify about whether he perceived any inconsistencies between two alleged victims' respective versions of events; and (6) allowing the State to dismiss Counts 27, 28, and 29 during the trial without his consent rather than entering a judgment of acquittal on those counts.

[¶2]  We agree with Paquin that the convictions on both Counts 5 and 30 violated his double jeopardy protections and we remand for dismissal of Count 30.  We also agree that the court erred in allowing the State to dismiss Counts 27, 28, and 29 during the trial and therefore remand for entry of a judgment of acquittal on those counts.  In all other respects, we affirm the judgment.

## I.  BACKGROUND

[¶3] Viewing the evidence in the light most favorable to the jury's verdict, *see State v. Marble*, 2019 ME 157, ¶ 7, 218 A.3d 1157, the jury rationally could have found the following facts.  In the early 1980s the victim was an altar boy at the Roman Catholic Church in Haverhill, Massachusetts, where Paquin was a priest.  When the victim was nine or ten years old, Paquin, while discussing with

the victim a human sexuality class that Paquin was taking, told the victim that "it was perfectly normal for men to touch each other." At some point Paquin committed a sexual act against the victim in Haverhill.

[¶4]  Beginning in the winter of 1985, and continuing until just before he turned fourteen, the victim made numerous trips to Kennebunkport with Paquin, staying at a campground in Paquin's camper or in the motel associated with the campground.  On those trips Paquin routinely provided the victim with alcohol and committed sexual acts against him.

[¶5]  In February 2017 the grand jury returned an indictment against Paquin; as later amended, the indictment charged Paquin with fifteen counts (Counts 1-13, 30-31) of gross sexual misconduct (Class A), 17-A M.R.S.A. § 253(1)(B), against the victim; and sixteen counts (Counts 14-29) of gross sexual misconduct (Class B), 17-A M.R.S.A. § 253(2)(A) (Supp. 1985), against a second alleged victim.[2]  The case was tried to a jury on November 26-29, 2018. During the trial, the court granted Paquin's motion for a judgment of acquittal on Counts 10-13, and the State dismissed Counts 27-29.  The jury returned verdicts of guilty on the remaining counts concerning the victim (Counts 1-9,

---

[2]  The convictions at issue in this appeal resulted from Paquin's crimes committed against one person, referred to in this opinion as "the victim."

30-31) and not guilty on the remaining counts concerning the second alleged victim (Counts 14-26). The court denied Paquin's motion for a new trial.

[¶6] At the sentencing hearing, the court entered judgment in accordance with the verdict and sentenced Paquin on each count to concurrent terms of twenty years' imprisonment, with all but sixteen years suspended, and three years of probation. Paquin timely appealed and filed an application to appeal from the sentence. On August 7, 2019, the Sentence Review Panel denied Paquin leave to appeal from his sentence.

## II. DISCUSSION

[¶7] We discuss Paquin's six assertions of error in turn.

A.    Victim's Criminal History

[¶8] In a chambers conference on the second day of the trial, Paquin's counsel raised the issue of his wish to cross-examine the victim using nonspecific criminal history that the victim had disclosed in an arbitration statement as part of his civil lawsuit against the Catholic Church. Counsel acknowledged that all Paquin knew about the criminal history was based on the arbitration statement. When the State objected, the court advised defense counsel that "[y]ou can't go on a fishing expedition before the jury. . . . I have to

base my ruling on [M.R. Evid.] 609,[3] so do you know what [the victim's] conviction history is, what he was convicted of and for what?" Counsel answered, "No."

[¶9] Defense counsel then requested that the State produce the victim's criminal history as "something that should be discoverable in this case, something that they should provide us." The State objected on the ground that it had already provided in discovery all of the information it had, and argued that a request for discovery on the second day of trial concerning information previously known to Paquin was "not appropriate." The court sustained the State's objection and ruled that Paquin would not be allowed to inquire on cross-examination about the victim's self-reported convictions "unless [counsel has] some specific information about his . . . criminal history."

[¶10] Paquin acknowledges that "Maine's discovery rules contain no provision specifically requiring the production of the criminal history record of a complaining witness who testifies at trial," and he does not assert that the State failed to produce any discovery explicitly required by M.R.U. Crim. P. 16 or by *Brady v. Maryland*, 373 U.S. 83 (1963),[4] and its progeny. Rather, Paquin

---

[3] Maine Rule of Evidence 609 governs the impeachment of a witness by evidence of a criminal conviction.

6

urges us to hold that Rule 16 implicitly requires the State to produce the criminal history of a complaining witness who testifies at trial because, he argues, the State is always in constructive possession of that information and it "is potentially impactful on the outcome of [the] trial."[5]

[¶11] "We afford the trial court substantial deference in overseeing the parties' discovery . . . ." *State v. Silva*, 2012 ME 120, ¶ 8, 56 A.3d 1230. "Only when the defendant can establish that the effect [of an alleged discovery violation] is so significant as to deprive him of a fair trial will we vacate on that basis." *Id.* Furthermore, in considering Paquin's discovery request made during trial concerning a matter of which he was aware, the court was entitled to consider the potential delay involved. *See id.* ¶¶ 5, 9. Without deciding if or when the State is ever required to do so, we conclude that on this record the trial court did not err in ruling that the State was not required to produce the victim's criminal history mid-trial.

[¶12] Maine Rule of Evidence 16(a)(2)(D), the automatic discovery rule invoked by Paquin, requires the State to produce "[a] statement describing any

---

[4] We recently explained that "[t]he due process concepts articulated in *Brady* require the State to disclose to the defendant evidence that is favorable to the accused, either because it is exculpatory, or because it is impeaching." *State v. Reed-Hansen*, 2019 ME 58, ¶ 13, 207 A.3d 191 (quotation marks omitted).

[5] Paquin does not argue "that the State is required to produce such records of *every* witness, only those, such as [the victim in this case], on [whose] testimony its case depends."

matter or information known to the attorney for the State *that may not be known to the defendant* and that tends to create a reasonable doubt of the defendant's guilt as to the crime charged." (Emphasis added.) Here, Paquin knew prior to trial that the victim had a self-reported criminal history. When the court inquired: "And this was information that you received in discovery earlier in the case?" counsel answered, "Sure."

[¶13] Furthermore, Paquin made no showing that he requested from the State or otherwise attempted to obtain the victim's criminal record prior to trial,[6] and he proffered no specific dates of conviction or other information that would allow the court to determine the admissibility of the purported convictions pursuant to M.R. Evid. 609(a)-(b), such as whether they were punishable by imprisonment for more than one year or whether their elements established dishonesty, *see* M.R. Evid. 609(a).

[¶14] In sum, given this record the court did not abuse its discretion in declining to compel the State to obtain the victim's criminal history during the trial, nor in ruling that Paquin could not cross-examine the victim concerning

---

[6] Paquin points to M.R.U. Crim. P. 16(c)(1), which requires the State to produce, upon the defendant's written request, specified items "that are material and relevant to the preparation of the defense." The record does not contain any such request from Paquin. Had he timely requested the victim's criminal history pursuant to the rule and the State declined to comply, the court would have had the authority, in its sound discretion, to issue an appropriate order. *See Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 17, 742 A.2d 933 (noting "the considerable discretion vested in the judge" in making a discovery ruling (quotation marks omitted)).

his nonspecific, self-reported criminal history. *See Silva*, 2012 ME 120, ¶ 8, 56 A.3d 1230.

B. Expert Testimony

[¶15] The victim testified to sexual abuse that occurred between 1985 and 1988, more than thirty years before the charges resulting from that abuse went to trial. He reached a settlement with the Catholic Church in 2010, and in 2011 he reported to the Maine Attorney General's Office what had happened.

[¶16] At trial, the State sought to call an expert witness to testify that victims of sexual abuse, particularly male victims, often disclose the abuse long after it occurred, and to explain why that is so. Following a lengthy voir dire, Paquin's objection to the expert's testimony, primarily on the ground that it unfairly bolstered the victim's credibility, was overruled. The court satisfied itself that the State was not seeking to elicit the expert's opinion concerning why the alleged victims in this particular case delayed reporting, and it excluded, pursuant to M.R. Evid. 403, any reference by the expert, while discussing delayed disclosure, to the abuser being a member of the clergy. The expert then testified that "delayed disclosure is actually the norm . . . . It's

almost expected given the statistics. . . . [M]en actually wait a great deal longer to disclose abuse." Paquin's renewed objected was overruled.

[¶17] "Whether proffered evidence requires expert explanation is a question left to the discretion of the trial court." *State v. Wyman*, 2015 ME 1, ¶ 26, 107 A.3d 641. Maine Rule of Evidence 702 allows "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if such testimony will help the trier of fact to understand the evidence or to determine a fact in issue."

[¶18] We discern no abuse of discretion in the court's determination that the expert was qualified and could testify concerning a matter that would assist the jury in understanding the evidence. *See id.*; *Wyman*, 2015 ME 1, ¶ 26, 107 A.3d 641. Furthermore, the court limited the risk of unfair prejudice to Paquin by restricting the expert's testimony to the subject of delayed disclosure in general—as opposed to an opinion as to why the victim in this case may have made a late disclosure—and excluding from the expert's opinion the effect of an abuser being a member of the clergy.[7] *See* M.R. Evid. 403.

[¶19] That said, "[a]n expert opinion must be relevant to an issue in the case." *State v. Napier*, 1998 ME 8, ¶ 5, 704 A.2d 869. The trial court's

---

[7] The expert testified that her employer "coordinate[s] . . . investigations of child sexual abuse in Cumberland County." We reject Paquin's assertion that this testimony unfairly bolstered the victim's

10

determination of relevancy is reviewed for clear error. *Id.* In this case, the expert's testimony regarding the phenomenon of delayed disclosure was not relevant if, as Paquin contends, "There is no evidence that [the victim] delayed disclosing his abuse."

[¶20] We agree that the evidence does not establish as a certainty when or to whom the victim made a first disclosure, but establishes only that he first disclosed the abuse to Maine law enforcement authorities in 2011, and that he had reached a settlement with the Church in 2010. However, at trial Paquin accepted the premise that the victim had in fact made a delayed disclosure, and he asserted it as a fact in objecting to the expert's testimony:

> [PAQUIN]: You know, we haven't made an issue of *the late disclosure. Obviously, it's out there . . . .*
>
> . . . .
>
> And so given that we didn't highlight that, that *we didn't call into question the late report*, we don't really think that it's incredibly

---

credibility because the expert's tangential connection to law enforcement "allowed [her] to sit as a sort of human polygraph," and the victim "[a]pparently . . . passed those truth-telling tests." The expert went on to say that her duties involved "forensic interviews of *children*" (emphasis added); here, the expert testified that she had never met the victim, who, in any event, was forty-four years old at the time of the trial. Given that evidence, we cannot conclude that the jury was led to believe that the expert was vouching for the victim's personal credibility.

probative at this point to have someone come in and testify as to a late disclosure.

. . . .

We want to avoid the suggestion that because of *this failure to disclose or delayed disclosure* that there were other victims out there in . . . this particular case.

(Emphasis added.)

[¶21]  When the court ruled on his objection, Paquin did not take issue with the court's statement that

[b]ased on the testimony of both [alleged victims], it is clear there has been a substantial delay in reporting these alleged events. They . . . allegedly occurred in the late 1980s.  The disclosure was not made at the time.  It was made a number of years later.

That delay has been referenced by counsel, by the defense both in opening statement and as part of cross-examination of at least [a detective who testified].

[¶22]  Pursuant to M.R. Evid. 104(a), "[t]he court must decide any preliminary question about whether . . . evidence is admissible."  Like the court's relevancy determination, a Rule 104(a) decision is reviewed for clear error.  *Walton v. Ireland*, 2014 ME 130, ¶ 12, 104 A.3d 883; *see Napier*, 1998 ME 8, ¶ 5, 704 A.2d 869.  Here, the court's finding that "there has been a substantial delay in reporting these alleged events," a precursor to the expert's opinion being relevant and therefore admissible, was not clearly erroneous

12

given the evidence establishing when the abuse occurred and when the victim first reported it to Maine authorities, coupled with Paquin's implicit admission that the victim's report had been substantially delayed.

C.    Double Jeopardy

[¶23]    Paquin contends that the court's entry of judgment on both Counts 5 and 30 violates his constitutional double jeopardy protections. U.S. Const. amend. V; Me. Const. art. I, § 8.  Reviewing for obvious error because this issue was not raised at trial, *see* M.R.U. Crim. P. 52(b), we agree.

[¶24]  In *State v. Martinelli*, discussing the constitutional double jeopardy bar against "multiple punishments for the same offense," 2017 ME 217, ¶ 5, 175 A.3d 636 (quotation marks omitted), we explained that

> [b]ecause a person, by one act or transaction, may violate multiple criminal laws, courts apply the *Blockburger* test to determine whether the crimes enumerated by those multiple statutes are the same offense for purposes of double jeopardy protections.  *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The test asks whether each statutory provision requires proof of a fact that the other does not.  If *each* statutory provision requires a unique proof of fact, the *Blockburger* test is satisfied and there is no double jeopardy violation by subsequent prosecutions or multiple punishments.

*Id.* ¶ 7 (emphasis added) (quotation marks omitted).

[¶25]  The indictment against Paquin charged:

**Count 5:**  On or about between November 1, 1986 and February 28, 1987, in Kennebunkport, YORK County, Maine, **RONALD PAQUIN**, did engage in a sexual act with [the victim] . . . , not his spouse, who had not in fact attained his fourteenth birthday.

**Count 30:** On or about between December 1, 1986 and December 31, 1986, in Kennebunkport, YORK County, Maine, **RONALD PAQUIN**, did engage in a sexual act with [the victim] . . . , not his spouse, who had not in fact attained his fourteenth birthday. To wit: Engaging in a sexual act in the form of direct physical contact between the genitals of [the victim] . . . and the mouth of **RONALD PAQUIN**.

[¶26]  Paquin argues that although Count 30 requires proof of a specific type of sexual act whereas Count 5 is satisfied by proof of any sexual act, the two counts do not *each* "require[] proof of a fact that the other does not," *id.* (quotation marks omitted), because the jury could find that a single sexual act—Paquin putting his mouth on the victim's genitals in December 1986—satisfied the State's burden of proof on both counts.  Put another way, only Count 30 required proof of a unique fact, and if Paquin committed the crime charged in Count 30, then he necessarily committed the crime charged in Count 5.

[¶27]  Accordingly, applying *Martinelli*, a judgment of conviction on both counts violates the Double Jeopardy Clause unless the State proved at trial that the convictions did not arise from "the same act or transaction."  *Id.* ¶ 9

(quotation marks omitted). As Paquin notes, the State did not. Although the jury might have found that separate incidents formed the basis of its verdicts on Counts 5 and 30, we cannot know that, and will not assume it.

[¶28] The trial court's instruction following a note from the jury during deliberations confirms this analysis. The note read: "Could we please get clarification of the difference between charges 1 through 9 and charge number 30 and then charge number 31?" The court answered the jury: "[A]ll of those charges, Counts 1 through 9 and Counts 30 and 31, *charge the same offense*. . . . So all of those charges *involve the same crime*." (Emphasis added.) Specifically concerning Count 30, the court correctly instructed that "the State's burden is to prove beyond a reasonable doubt that [the] particular type of sexual act occurred and that it occurred within the date range specified in Count 30." The double jeopardy problem arises because if the jury found that the State met that exact burden of proof, nothing more was required for it to find Paquin guilty on Count 5 as well.

[¶29] Because the Double Jeopardy Clause directs that Paquin cannot stand convicted of both Counts 5 and 30, we remand for the dismissal of Count 30. Resentencing on Count 5, as urged by Paquin, is not required because

each of the remaining ten convictions is for the same crime and resulted in identical concurrent sentences.

D.    Jury Instruction

[¶30]  Count 31 charged:

On or about between June 1, 1988 and August 21, 1988 . . . RONALD PAQUIN, did engage in a sexual act with [the victim] . . . , not his spouse, who had not in fact attained his fourteenth birthday.  To wit: Engaging in a sexual act in the form of direct physical contact between the anus of [the victim] . . . and the genitals of RONALD PAQUIN.

The victim's fourteenth birthday was the day following the last day charged in Count 31.  Consequently, in order to return a verdict of guilty on Count 31 the jury was required to find beyond a reasonable doubt that direct physical contact between the genitals of Paquin and the anus of the victim occurred on or before August 21, 1988.

[¶31]  Concerning the indictment generally, the court instructed:

The indictment alleges that each offense was committed on or about a specific period of time in each particular count.  The specific date of the alleged crime need not be proven.  It is enough if the State proves beyond a reasonable doubt that the offense charged was committed by the defendant and it happened sometime within the dates suggested by the evidence of the case with respect to each count.

The question of whether the offense was committed, not when it happened, must be the principal focus of your inquiry; however, you may consider any evidence of uncertainty as to the

dates of the alleged offense in deciding whether the offense was proven beyond a reasonable doubt . . . .

[¶32]  Paquin contends that the instruction was erroneous because it allowed the jury to return a guilty verdict even if it found that a sexual act occurred after August 21, 1988, when the victim had reached age fourteen. Because Paquin did not object to the instruction at trial, we review it for obvious error.  *State v. Williams*, 2020 ME 17, ¶ 24, --- A.3d ---.  The obvious error standard requires Paquin to show that "there is (1) an error, (2) that is plain, and (3) that affects substantial rights.  Even if these three conditions are met, we will set aside a jury's verdict only if we conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings."  *Id.* n.6 (quotation marks omitted).  We have said that

> [a]n error regarding jury instructions is plain if that error is so clear that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.  An error affects a criminal defendant's substantial rights if the error was sufficiently prejudicial to have affected the outcome of the proceeding.  In reviewing for obvious error, our ultimate task is to determine whether the defendant received a fair trial.

*State v. Lajoie*, 2017 ME 8, ¶ 15, 154 A.3d 132 (citations and quotation marks omitted).

[¶33]  In *State v. Hodgdon*, we found that an instruction functionally identical to the one at issue in this case did not rise to the level of obvious error,

"considering the instructions as a whole, as we must do," because "[t]he court on several occasions informed the jury of the requirement that to return a guilty verdict . . . [it] must find that the victim was under the age of fourteen years at the time the offenses occurred." 2017 ME 122, ¶¶ 11, 16, 164 A.3d 959. Here, as in *Hodgdon*, the trial court repeatedly instructed the jury, both orally and in its written instructions, and specifically concerning Count 31, that it must find beyond a reasonable doubt that the victim was under the age of fourteen in order to return a verdict of guilty. When the jury sent out a note asking about Count 31, the court reemphasized that the State was required to prove beyond a reasonable doubt that the victim "had not yet attained his 14th birthday." As we did in *Hodgdon*, we conclude that there is no obvious error demonstrated on this record. *See id.* ¶ 16.

[¶34] That said, we noted in *Hodgdon* that the "on or about" instruction commonly used in Maine courts[8] is problematic, standing alone, when the applicable statute requires the State to prove that the crime charged occurred on or before a specific date in order to avoid a judgment of acquittal. *Id.* Such is the case here, where the jury was required to return a verdict of not guilty if it found that the sexual act charged in Count 31 occurred on or after

---

[8] *See* Alexander, *Maine Jury Instruction Manual* § 6-30 at 6-61 (2018-2019 ed. 2018).

August 22, 1988—the victim's fourteenth birthday. Although we conclude that the court's instructions were not clearly erroneous when considered as a whole, a better approach would have been for the court to make the specific date limitation clear in its "on or about" instruction, in addition to stating the "under age fourteen" requirement elsewhere in its instructions.[9]

E. Inconsistent Witness Statements

[¶35] When Paquin cross-examined a Kennebunkport police detective, he asked, "When you interviewed the two alleged victims, did you notice any inconsistencies in their stories? Did they match?" The State objected and the following exchange took place at sidebar:

> [PAQUIN]: Judge, he's a trained detective. He can—he's got the ability to judge whether someone's credible or not.
>
> [STATE]: So, Judge, the State's objection is he absolutely cannot judge someone's credibility. That's the purview of the jury and the jury alone. . . .

---

[9] For example, without requiring that trial courts employ any particular language, the court in this case could have made its instruction concerning Counts 1-9 and 30-31 more complete by saying (modification in italics):

> The indictment alleges that each offense was committed on or about a specific period of time in each particular count. The specific date of the alleged crime need not be proven. It is enough if the State proves beyond a reasonable doubt that the offense charged was committed by the defendant and *that, concerning Counts 1-9 and Counts 30-31, each offense was committed before the alleged victim reached his fourteenth birthday*.

*See supra* ¶ 31.

[PAQUIN]: I'm asking for factual information regarding visits and times and when people were there.

COURT: Is there a specific statement that you are seeking to illuminate as inconsistent, or are you just asking generally?

[PAQUIN]: Kind of asking generally.

COURT: The objection's sustained.

[¶36] "We review a trial court's ruling on the admissibility of evidence for clear error or abuse of discretion." *State v. Tieman*, 2019 ME 60, ¶ 12, 207 A.3d 618. It is well established that credibility determinations are within the sole province of the jury. *See State v. Sweeney*, 2004 ME 123, ¶ 11, 861 A.2d 43 ("Questions that ask a witness to give an opinion of another witness's veracity are improper because determining the credibility of a witness is the sole province of the fact-finder."). Paquin argues that the credibility of the alleged victims was not implicated by his question because he was not asking the detective whether he believed one or the other, but rather whether there were any inconsistencies in their accounts as a factual matter.

[¶37] Setting aside the issue of whether Paquin's question called for an improper credibility opinion, the court did not abuse its discretion in sustaining the State's objection because whether the detective discerned any inconsistencies in the alleged victims' accounts was of limited relevance given

Paquin's opportunity to cross-examine them. *See id.* ("One witness's opinion of another witness's truthfulness is not helpful to the jury when the jury has the opportunity to hear both witnesses."); M.R. Evid. 403. Paquin was then free to highlight any perceived inconsistencies in their respective accounts during his closing argument.

F.      Dismissal of Counts 27-29

[¶38]  Paquin finally contends that the court erred in allowing the State to dismiss Counts 27-29 during the trial rather than entering a judgment of acquittal on those counts. Those counts concerned the second alleged victim; the jury returned verdicts of not guilty on all counts concerning the second alleged victim that were submitted to it (Counts 14-26).

[¶39] After the second alleged victim testified, the State advised the court in chambers that it would be dismissing Counts 27-29 "with regard to [the second alleged victim] based on his testimony of not recalling." The court replied, "All right. Then Counts 27, 28 and 29 are dismissed." When Paquin's counsel raised the question of whether Paquin's consent to the dismissal was required, the court advised: "[T]he State anticipated my thinking on this because I would be disposed, unless they present a witness . . . to fill in the blanks on Counts 27, 28 and 29, I would be dismissing those counts on a

judgment in response to [a motion for a judgment of acquittal] anyway, so it's sort of moot." The court deferred ruling pending Paquin's response to the proposed dismissal, but said, "I've already indicated I'm likely to grant the motion for judgment of acquittal on those three counts anyway. Whether [Paquin] agrees or not, the evidence is not in the record at this point."

[¶40] After the State rested its case-in-chief on the third day of the trial, Paquin moved for a judgment of acquittal on all counts. In ruling on the motion, the court again stated that "with respect to Counts 27, 28 and 29 . . . I would be inclined to grant the motion for acquittal." This exchange followed:

> [STATE]: Judge, would have [*sic*] the Court consider it moot, then I think we were waiting in chambers to determine if there would be an objection to those dismissals, and I just want to make sure the record's clear that's mooted then.
>
> COURT: I haven't heard an objection, so either way, 27 either— either dismissal without objection or on the basis of [M.R.U. Crim. P. 29]. Counts 27, 28 and 29 are dismissed.
>
> [STATE]: Judge, the State would move orally to dismiss those without objection.
>
> COURT: 27, 28 and 29 are dismissed without objection.

The court later summarized its ruling, saying in part that the motion for judgment of acquittal "is moot with respect to [Counts] 27, 28 and 29 and those counts have been dismissed by agreement."

[¶41]  The State later filed a written dismissal for the stated reason: "Probable cause established but insufficient evidence to establish guilt beyond a reasonable doubt on those Counts."  The written dismissal inaccurately stated that "[c]ounsel for the Defendant indicated on the record that the Defendant does not object to the dismissal of these Counts."

[¶42]  Contrary to the written dismissal and the State's expressed wish "to make sure the record's clear," neither of Paquin's attorneys ever expressly said whether Paquin did or did not consent to the dismissals, although the State is correct in arguing that they had multiple opportunities to do either.  Pursuant to M.R.U. Crim. P. 48(a), "a dismissal may not be filed during the trial without the consent of the defendant."  The reason for the rule is that "dismissal of charges after jeopardy has attached without the consent of the defendant raises a serious double jeopardy problem."  2 Cluchey & Seitzinger, *Maine Criminal Practice* § 48.2 at IX-102 (Gardner ed. 1995).

[¶43]  Beyond the potential violation of Rule 48(a), we conclude that Paquin was in fact acquitted on Counts 27-29.  "[A] defendant once acquitted may not be again subjected to trial without violating the Double Jeopardy Clause."  *United States v. Scott*, 437 U.S. 82, 96 (1978).  The Double Jeopardy Clause is implicated "when it is plain that the [trial court] evaluated the

[prosecution's] evidence and determined that it was legally insufficient to sustain a conviction." *Id.* at 97 (quotation marks omitted).

[¶44] The Supreme Court said in *Scott* that "the trial judge's characterization of his own action cannot control the classification of the action," and explained that "a defendant is acquitted . . . when the ruling of the judge, whatever its label, actually represents a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offense charged." *Id.* at 96-97 (alteration and quotation marks omitted). Applying *Scott*, the trial court's characterization of its action on Counts 27-29 as a dismissal does not control our analysis, *see id.* at 96; rather, we consider that after the State proposed a dismissal due to insufficient evidence, the court repeatedly said that absent a dismissal it would grant Paquin's motion for acquittal on those counts. The State then filed a written dismissal for the explicit reason that there was insufficient evidence to support them.

[¶45] Because "the ruling of the judge . . . actually represent[ed] a resolution in the defendant's favor . . . of some or all of the factual elements of the offense[s] charged" in Counts 27-29, the court's action—although termed a dismissal—acquitted Paquin on those counts. *Id.* at 97 (alteration and quotation marks omitted). Accordingly, we vacate the dismissal of

Counts 27-29 and remand with instructions to enter a judgment of acquittal on those counts.

G.     Conclusion

[¶46]   For the reasons set forth in this opinion, we (1) vacate the judgment of conviction on Count 30 and remand for a dismissal of that count, and (2) vacate the dismissal of Counts 27, 28, and 29 and remand for entry of a judgment of acquittal on those counts.  In all other respects we affirm the judgment.

The entry is:

> Dismissal of Counts 27, 28, and 29 vacated; remanded with instructions to enter a judgment of acquittal on Counts 27, 28, and 29.  Judgment of conviction on Count 30 vacated; remanded with instructions to dismiss Count 30 with prejudice.  In all other respects, judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Ronald Paquin

Kathryn L. Slattery, District Attorney, and Justina McGettigan, Dep. Dist. Atty. (orally), Prosecutorial District #1, Alfred, for appellee State of Maine

York County Unified Criminal Docket docket number CR-2017-109
FOR CLERK REFERENCE ONLY