MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2025 ME 30
Docket:         Cum-23-417
Submitted
  On Briefs:    October 30, 2024
Decided:        March 20, 2025

Panel:          STANFILL, C.J., and MEAD, HORTON, CONNORS, and DOUGLAS, JJ.

STATE OF MAINE

v.

ABDIHAMIT A. ALI

STANFILL, C.J.

[¶1]  Abdihamit A. Ali appeals from a judgment of conviction of elevated aggravated assault, reckless conduct with a dangerous weapon, possession of a firearm by a prohibited person, and criminal mischief entered by the trial court (Cumberland County, *Woodman, J.*) following a jury trial.[1]  The court imposed a sentence of fifteen years, with all but seven years suspended, followed by four years of probation on the elevated aggravated assault charge, with concurrent sentences on the other charges.  On appeal, Ali argues that the court abused its discretion in admitting a police officer's hearsay testimony about what Ali's mother told other officers.  Although we agree that the mother's statement

---

[1]  The charge of possession of a firearm by a prohibited person was simultaneously tried to the court without a jury.

2

should not have been admitted without a limiting instruction that it not be considered for its truth, we conclude that the error was harmless. Ali also argues that his convictions for elevated aggravated assault and reckless conduct with a dangerous weapon should have been merged. We agree that the court erred in failing to merge those convictions and therefore vacate the sentence and remand for resentencing.

## I. BACKGROUND

[¶2] Viewed in the light most favorable to the verdict, the jury could have found the following facts beyond a reasonable doubt. *State v. Hansen,* 2020 ME 43, ¶ 2, 228 A.3d 1082.

[¶3] In the early morning hours of September 3, 2022, Jane Doe[2] was with friends when she got into an altercation with multiple people, including Ali, in the parking lot outside of a party at Woodfords Club in Portland. Police were called to defuse the situation. While the officers worked to clear out the parking lot, Ali and a few others drove back into the parking lot in a rental car, a black Nissan Altima, before leaving the club. Doe also left the club, dropping two friends off before driving home to her apartment.

---

[2] We use the pseudonyms "Jane Doe" and "Mary Smith" to refer to the two adult victims in this case.

[¶4] Two cars—the black Nissan that Ali had been in at the club, and a silver Camry owned by the mother of one of Ali's friends—followed Doe to her apartment. Doe parked and recognized Ali in the silver Camry nearby. After Doe got out of her car, Ali got out of the Camry holding a handgun and fired gunshots into the air; one of these shots went through the wall of a nearby apartment and into the bedroom where Mary Smith was sleeping with her four-year-old child.

[¶5] Doe froze and crouched down, and Ali walked toward her and asked, "You want to die?" while standing over her with the gun. Ali then fired the gun at Doe from approximately three feet away, and the bullet went through her leg. Ali got back into the silver Camry, which had at least one other person in it, and drove away. Doe went by ambulance to the hospital for treatment.

[¶6] While being treated for her injury that evening, Doe told police that she knew the person who shot her and gave a description. Doe explained that she knew the shooter's family from her local community and provided Ali's nickname to police.

[¶7] After learning this information, two police officers visited Ali's home approximately two hours after the shooting. Although Ali's white Kia was at his home, the officers spoke only to Ali's mother and not to Ali. In the morning,

4

police created a photo lineup. Doe then picked Ali out of the lineup and told police she was "1000%" sure it was Ali who shot her.

[¶8] Ali was indicted by a grand jury on October 5, 2022, and charged with elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(A) (2024) (Count 1); reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. § 211(1) (2024), 17-A M.R.S. § 1604(5)(A) (2024) (Count 2); possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(C)(1) (2024) (Count 3); and criminal mischief (Class D), 17-A M.R.S. § 806(1)(A) (2024) (Count 4). Ali pleaded not guilty and proceeded to a jury trial.

[¶9] During trial, the State elicited testimony from the lead detective about what he had learned from the officers who went to Ali's home two hours after the shooting. The State asked the detective, "Were [the officers] able to determine in talking with family members if Mr. Ali was at that apartment?" The detective responded, "They took the family members [i.e., Ali's mother] at their word that [Ali] was not home." The court overruled Ali's objection to this testimony.

[¶10] The jury returned a verdict of guilty on Counts 1, 2, and 4, and the court found Ali guilty of Count 3. On September 22, 2023, the court sentenced Ali on Count 1 to fifteen years, with all but seven years suspended, together

with a probation term of four years. The lesser sentences on the remaining counts were ordered to be concurrent with Count 1. Ali timely appealed. 15 M.R.S. § 2115 (2024); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶11] We address two issues raised by Ali: whether the court abused its discretion by admitting hearsay testimony and whether the court erred by not merging duplicative convictions.

### A. The admission of the hearsay statements was harmless error.

[¶12] Ali contends that the detective's testimony concerning Ali's mother's statements to other police officers constitutes inadmissible hearsay and thus should have been excluded by the trial court. Specifically, Ali claims that this testimony was admitted for the truth of the matter asserted, that is, to establish that Ali was not home about two hours following the shooting. The State asserts a non-hearsay purpose for this testimony and argues, in the alternative, that any error in admitting this testimony is harmless.[3]

[¶13] "We review a trial court's decision to admit or exclude alleged hearsay evidence for an abuse of discretion." *State v. Fox*, 2017 ME 52, ¶ 29, 157 A.3d 778 (quotation marks omitted). Statements containing multiple

---

[3] The State also contends that Ali waived this issue. We conclude that it is not waived.

6

levels of hearsay are impermissible unless "each part of the combined statements conforms with an exception to the rule" against hearsay. M.R. Evid. 805.

[¶14] We conclude that the detective's testimony is indeed hearsay and is not within any exception. The testimony consists of two layers of out-of-court statements, each offered for its truth: a statement from Ali's mother to the two police officers, and statements from the two police officers to the testifying detective. The State argues to us that the testimony was not admitted for the truth but instead "for its effect on the listener to provide the jury with a complete picture of the police investigation." This argument was not made at the time, nor did the court provide a limiting instruction.[4] As a result, the jury was entitled to rely on the testimony to conclude that Ali was not home approximately two hours after the shooting. The testimony was clearly hearsay and should not have been admitted, particularly without a limiting instruction.

[¶15] Although the trial court abused its discretion in admitting the hearsay testimony, we conclude that this error is harmless because "it is highly probable that the error did not affect the judgment." *State v. Guyette*, 2012 ME

---

[4] We also suggest that even if there had been a limiting instruction, any relevance of the testimony to providing "a complete picture of the police investigation" was minimal.

9, ¶ 19, 36 A.3d 916 (quotation marks omitted). Whether Ali was at home two hours after the shooting was of little consequence to the issues. Viewing the trial record as a whole, including the significant evidence placing Ali at the crime scene,[5] it is highly probable that the court's error in admitting the detective's hearsay testimony did not contribute to the jury's verdict.

## B. Counts 1 and 2 must be merged and the matter remanded for resentencing.

[¶16] Ali contends that the trial court erred by failing to merge his convictions on Count 1 (elevated aggravated assault) and Count 2 (reckless conduct with a firearm). Although this issue was not preserved, the failure to merge duplicative counts constitutes obvious error. *See State v. Fleury*, 2025 ME 18, ¶ 14, --- A.3d ---; *Chase*, 2023 ME 32, ¶ 20, 294 A.3d 154; *State v. Paquin*, 2020 ME 53, ¶ 23, 230 A.3d 17, *abrogated on other grounds by State v. Armstrong,* 2020 ME 97, 237 A.3d 185; *see also* M.R.U. Crim. P. 52(b).

[¶17] The double jeopardy clause of the federal constitution bars "multiple punishments for the same offense."[6] *Armstrong*, 2020 ME 97, ¶ 7, 237

---

[5] For example, Doe identified Ali by picking Ali out of a photo lineup and by explaining her knowledge of Ali and his family. In addition, Smith provided a description that matched Ali. Moreover, camera footage from the club showed Ali in a car that matched a car shown in security footage from Doe's apartment complex.

[6] Although Ali adverts to article I, section 8 of the Maine Constitution in addition to the Fifth Amendment of the Federal Constitution, he develops no separate state constitutional argument. We

A.3d 185 (quotation marks omitted).  When multiple crimes are charged with respect to the same act or transaction, "the test to be applied to determine whether there are two offenses or only one is whether each [offense] requires proof of an additional fact which the other does not."  *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  But when the conduct is distinct—that is, when crimes are charged with respect to separate acts or transactions—then the *Blockburger* test and double jeopardy analysis "generally are inapplicable." *State v. Martinelli*, 2017 ME 217, ¶ 9, 175 A.3d 636.

[¶18]  The elements of elevated aggravated assault require the State to prove that a person (1) intentionally or knowingly (2) caused serious bodily injury to another person (3) with the use of a dangerous weapon.  17-A M.R.S. § 208-B(1)(A).  Similarly, the elements of reckless conduct with a dangerous weapon require the State to prove that a person (1) recklessly (2) created a substantial risk of serious bodily injury to another person (3) with the use of a dangerous weapon.  17-A M.R.S. § 211(1), 17-A M.R.S. § 1604(5)(A).

[¶19]  These offenses do not each require proof of an element that the other does not.  *See Blockburger*, 284 U.S. at 304.  By statute, recklessness is

---

therefore address the issue under federal law only, including our cases interpreting it.  *See State v. DesRosiers*, 2024 ME 77, ¶ 31 n.8, 327 A.3d 64.

established if a person acts intentionally or knowingly, and thus the required mens rea of Count 2 is subsumed into Count 1. *See* 17-A M.R.S. § 34(3) (2024). The second elements similarly fail to satisfy *Blockburger*: "causing" serious bodily injury includes "creating a substantial risk" of serious bodily injury because causing the injury is the effectuation, or realization, of the substantial risk. Finally, the third elements are identical: that the offense was committed with the use of a dangerous weapon. Because only one of the two offenses with which Ali was convicted has an element that the other does not, Ali cannot be sentenced for both offenses and merger is required.

[¶20] The State argues that there was ample evidence of two distinct incidents. Specifically, the State contends that the reckless conduct charge is based on Ali's conduct of shooting into the air and putting a bullet through the wall of the apartment where Smith and her child were sleeping. In contrast, the State argues that the elevated aggravated assault charge is based on Ali's conduct of shooting Doe in the leg. These events took place about eleven seconds apart.

[¶21] Ali could have been convicted of two offenses with two different victims, as articulated by the State on appeal, without running afoul of the

prohibition against double jeopardy. But that is not how he was charged. The indictment charged Ali as follows:

Count 1: On or about September 03, 2022, in Portland, Cumberland County, Maine, ABDIHAMIT ABDULLAHI ALI, did intentionally or knowingly cause serious bodily injury to [Jane Doe] with the use of a dangerous weapon, a firearm.

Count 2: On or about September 03, 2022, in Portland, Cumberland County, Maine, ABDIHAMIT ABDULLAHI ALI, did recklessly create a risk of serious bodily injury to [Jane Doe] and/or [Mary Smith] and/or a minor child with the use of a dangerous weapon, a firearm.

The indictment did not specify any additional facts underlying these two charges. Based on the indictment, Doe was an alleged victim of both charges, and the jury was so informed when the indictment was read aloud at both the start and close of the trial.

[¶22] Thus, the language in the indictment allowed the jury to find that Ali was guilty of both reckless conduct with a dangerous weapon and elevated aggravated assault based solely on shooting Doe in the leg. There was only one reckless conduct charge, and it applied to Doe or, *in the alternative*, Smith, the child, or both. Therefore, the jury could have based its verdict for both offenses on the same conduct.

[¶23]  If the jury *could* have found that the same conduct formed the basis for both verdicts, then convictions for both offenses violate double jeopardy, and merger is required.  *Paquin*, 2020 ME 53, ¶¶ 26-28, 230 A.3d 17.  This is true even if the jury *might have* found that separate incidents formed the bases for the two verdicts.  *Id.* ¶ 27 (stating that "[a]lthough the jury might have found that separate incidents formed the basis of its verdicts" on two counts, "we cannot know that, and will not assume it.").

[¶24]  Because Counts 1 and 2 do not each require proof of a fact that the other does not, and because the jury could have found Ali guilty of Counts 1 and 2 based on the same conduct, the court's failure to merge the two convictions constitutes obvious error.  "[W]hen a trial results in multiple verdicts for the same offense, the appropriate procedure to prevent a double jeopardy violation is to merge, not dismiss, the duplicative counts."  *Fleury*, 2025 ME 18, ¶ 14, --- A.3d ---; *Armstrong*, 2020 ME 97, ¶ 11, 237 A.3d 185.  As a result, we "remand to the trial court for resentencing on a single conviction reflecting the merged counts." *Chase,* 2023 ME 32, ¶ 26, 294 A.3d 154 (quotation marks omitted).

The entry is:

> Sentence vacated.  Remanded for merger and resentencing consistent with this opinion.  Judgment affirmed in all other respects.

Zachary Fey, Esq., Richardson, Whitman, Large & Badger, Portland, and Rory A. McNamara, Esq., Drake Law LLC, York, for appellant Abdihamit A. Ali

Jacqueline Sartoris, District Attorney, Kristen M. Hughes, Asst. Dist. Atty., Cumberland County District Attorney's Office, Portland, and Jennifer Ackerman, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2022-3481
FOR CLERK REFERENCE ONLY